**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

Civ. Action No. 11-CV-1542 LEK/ATB

MPM SILICONES, LLC,

     Plaintiff

v.

UNION CARBIDE CORPORATION,

     Defendant

_____


**OPPOSITION OF PLAINTIFF MPM SILICONES, LLC**
**TO DEFENDANT UNION CARBIDE'S MOTION TO DISMISS**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................ii

INTRODUCTION ...........................................................................................................1

ARGUMENT ..................................................................................................................2

I.     Standard of Review..............................................................................................2

II.    There is No Basis for Preemption at This Time .......................................................2

        A.    The Record is Not Sufficiently Established to Conclude that MPM's State Law Claims are Preempted.........................................................3

        B.    Preemption is Not Warranted in the Absence of a CERCLA Settlement ...............................................................................................7

III.   MPM has Pled Facts Sufficient to Assert Contribution and Indemnification Claims and Those Claims are Ripe ....................................................8

IV.   MPM has Sufficiently Stated a Nuisance Claim ....................................................11

CONCLUSION..............................................................................................................14

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Arawana Mills Co. v. United Technologies Corp.*,
   795 F. Supp. 1238 (D. Conn. 1992) ....................................................................... 9, 11

*Arcade Water Dist. v. United States*,
   940 F.2d 1265 (9th Cir. 1991) ........................................................................... 11, 12

*Armored Group, LLC v. Homeland Sec. Strategies, Inc.*,
   2009 U.S. Dist. LEXIS 61006 (S.D.N.Y. Apr. 20, 2009)........................................ 10

*Ashcroft v. Iqbal*,
   556 U.S. 662, 129 S. Ct. 1937, 1949 (2009)........................................................... 2

*Associated Indem. Corp. v. Fairchild Indus. Inc.*,
   961 F.2d 32 (2d Cir. 1992) .................................................................................... 9

*Bedford Affiliates v. Sills*,
   156 F.3d 416 (2d Cir. 1998) .......................................................................... 3, 4, 7

*Cadillac Fairview/Cal., Inc. v. Dow Chem., Co.*,
   840 F.2d 691 (9th Cir. 1988) ................................................................................. 9

*Durham Mfg. Co. v. Merriam Mfg. Co*,
   128 F. Supp. 2d 97 (D. Conn. 2001)................................................................... 7, 8

*DVL, Inc. v. General Electric Co.*,
   811 F. Supp. 2d 579 (N.D.N.Y. 2010).................................................................. 4

*Georgia-Pacific Consumer Prods., LP v. Int'l Paper Co.*,
   566 F. Supp. 2d 246 (S.D.N.Y. 2008) ................................................................. 10

*IntelliSec v. Firecom, Inc.*,
   2001 U.S. Dist. LEXIS 2619 (E.D.N.Y. 2001)................................................... 10

*Kidder, Peabody & Co. Inc. v. Maxus Energy Corp.*,
   925 F.2d 556 (2d Cir. 1991) ................................................................................. 9

*Maryland Cas. Co. v. Pacific Coal & Oil Co*.,
   312 U.S. 270, 61 S. Ct. 510, 512 (1941)............................................................... 9

*Moore v. Texaco, Inc.*,
   244 F.3d 1229 (10th Cir. 2001) ............................................................................ 13

*New York v. Ametek, Inc.*,
   473 F. Supp. 2d 432 (S.D.N.Y. 2007) ............................................................... 5, 6

*New York v. Hickey's Carting, Inc.*,
    380 F. Supp. 2d 108 (E.D.N.Y. 2005) .............................................................. 4, 6, 8

*New York v. Solvent Chem. Co.*,
    664 F.3d 22 (2d Cir. N.Y. 2011).............................................................................. 9

*New York v. West Side Corp.*,
    790 F. Supp. 2d 13 (E.D.N.Y. 2011) ............................................................... passim

*Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.*,
    596 F.3d 112 (2d Cir. 2010) ........................................................................... 3, 4, 7

*Olin Corp. v. Consolidated Aluminum Corp.*,
    5 F.3d 10 (2d Cir. 1993) .......................................................................................... 9

*Prisco v. New York*,
    902 F. Supp. 374 (S.D.N.Y. 1995) ..................................................................... 9, 11

*Solow Building Co. v. ATC Assoc.*,
    388 F.Supp. 2d 136 (E.D.N.Y., 2005) ............................................................. 10, 11

*Volunteers of Am. Of W. N.Y. v. Heinrich*,
    90 F. Supp. 252 (W.D.N.Y. 2000) ...................................................................... 5, 6

## STATE CASES

*Mangini v. Aerojet-General Corp.*,
    230 Cal. App. 3d 1125, 281 Cal. Rptr. 827 (Calif. Ct. App. 1991) .................... 11, 13

*Sharon Steel Corp. v. City of Fairmont*,
    175 W. Va. 479, 334 S.E.2d 616 (1985).................................................................. 12

*Taylor v. Culloden Pub. Serv. Dist.*,
    214 W. Va. 639, 591 S.E.2d 197 (2003).................................................................. 12

*West Virginia ex rel. Smith v. Kermit Lumber & Pressure Treating Co.*,
    200 W.Va. 221, 488 S.E.2d 901 (1997).......................................................... 11, 12, 13

## FEDERAL STATUTES, REGULATIONS, AND RULES

40 C.F.R. 300 *et seq.* (2011) ...................................................................................... 5

15 U.S.C. §§ 2601-2697 (2010)................................................................................. 10

15 U.S.C. § 2615 (2010) ............................................................................................ 11

28 U.S.C. § 2201(a) (2010)......................................................................................... 9

iii

42 U.S.C. §§ 6901-6992k (2010) .................................................................................................... 11

42 U.S.C. § 9605 (2010) ................................................................................................................... 5

42 U.S.C. § 9607(a) (2010) .............................................................................................................. 3

42 U.S.C. § 9607(a)(4) (2010) ......................................................................................................... 5

42 U.S.C. § 9613 (2010) ................................................................................................................... 2

42 U.S.C. § 9614(a) (2010) .............................................................................................................. 2

Fed. R. Civ. P. 8(a)(2) ....................................................................................................................... 2

**INTRODUCTION**

As set forth in the core allegations in the Complaint, Union Carbide Corporation ("UCC"), from the 1950s until the 1970s, used and disposed of hundreds of thousands of pounds of PCBs in its manufacturing operations at a facility located in Sistersville, West Virginia (the "Site") and then failed to disclose that PCB use and disposal to regulators and to subsequent purchasers, including the current owner MPM Silicones, LLC ("MPM"). UCC does not dispute that those allegations set forth a claim under the federal Superfund statute – the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601, *et seq*. Instead, UCC in its Partial Motion to Dismiss contends that MPM should be limited to its claims under CERCLA and not permitted to pursue alternative claims under state law. If UCC had stipulated to its liability under CERCLA, such a narrowing of the case might make sense. However, given that UCC apparently intends to challenge its liability under CERCLA, it is not appropriate to deny MPM's right to plead alternative causes of action until such time as a factual record has been established to permit a fair evaluation of whether MPM's state law claims are preempted because they actually will conflict with the CERCLA contribution claim.

Because UCC's actions subject it to potential liability under numerous statutes and common law principles, MPM pleaded claims under both federal and state law. In its Motion to Dismiss, UCC argues that MPM is entitled to pursue only one avenue of potential relief because the relief that MPM seeks under its various claims may overlap. That is not the law. MPM is entitled to pursue parallel theories of recovery that would independently provide relief. Despite UCC's assertions, CERCLA does not provide otherwise. Indeed, CERCLA explicitly provides

that it does not preempt more stringent state claims.[1]  Equally unavailing are UCC's arguments

that MPM's contribution and indemnification claims are not ripe.  It is well settled that

contribution and indemnification claims for environmental contamination are ripe as soon as

costs have been incurred.  Finally, UCC ignores West Virginia case law holding that nuisance

claims are available to address past environmental contamination with lingering effects.


## ARGUMENT

## I.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a plaintiff need only provide a "short and

plain statement of the claim showing that the pleader is entitled to relief."  *See New York v. West*

*Side Corp.*, 790 F. Supp. 2d 13, 18 (E.D.N.Y. 2011).  A court may grant a motion to dismiss

pursuant to The Federal Rules of Civil Procedure where even "presum[ing] the truth of all

factual allegations in the complaint" the complaint fails to "'state a claim to relief that is

plausible on its face.'"  *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 663, 129 S. Ct. 1937, 1949

(2009)).  This "plausibility standard is not akin to a probability requirement, but it asks for more

than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678, 129 S. Ct.

1949.

## II.    THERE IS NO BASIS FOR PREEMPTION AT THIS TIME

According to UCC, if MPM were to prevail on its CERCLA contribution claim under

CERCLA Section 113(f)(1), 42 U.S.C. § 9613, that might result in a contribution allocation

which is inconsistent with the contribution allocation that would be available under state law.

---

[1] Section 114(a) of CERCLA, 42 U.S.C. § 9614(a) (2010), states that "Nothing in this chapter shall be
construed or interpreted as preempting any State from imposing any additional liability or requirements with respect
to the release of hazardous substances within such State."

2

Thus, UCC argues that MPM's state contribution claim is preempted.   UCC's contention fails

for two reasons – first, at this early stage in the litigation, the record is not sufficiently

established to ascertain whether MPM's CERCLA claim is for cost recovery under CERCLA

Section 107(a), 42 U.S.C. § 9607(a), or for contribution under CERCLA Section 113(f)[2] and,

second, the record is not sufficiently established to ascertain whether the contribution allocation

under federal and state law would address identical items of cost and damages.

### A.     The Record Is Not Sufficiently Established To Conclude That MPM's State Law Claims are Preempted

In support of its position, UCC cites two cases in which the Second Circuit concluded

that state law claims have the potential to actually conflict with CERCLA, and are therefore

preempted.  *See Bedford Affiliates v. Sills*, 156 F.3d 416, 426-27 (2d Cir. 1998); *Niagara*

*Mohawk Power Corp. v. Chevron U.S.A., Inc.*, 596 F.3d 112, 139 (2d Cir. 2010).[3]  Those cases

were not decided on a motion to dismiss.  Importantly, they each involved a finding of

preemption reached after trial or after a full evidentiary record had been established, which

---

[2] Based on the current state of facts as set forth in the Complaint, MPM believes it unquestionably has a cost recovery claim under CERCLA Section 107(a), 42 U.S.C. § 9607(a).  The record is not sufficiently clear, however, to definitively determine whether MPM also has a contribution claim under CERCLA, Section 113(f), particularly given recent changes in the interpretation of these sections.  *See, e.g., Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.*, 596 F.3d 112, 120-23 (2d Cir. 2010) (noting changes in relevant law).  MPM has not entered into any settlement with regulators nor has it been sued by the United States or West Virginia. MPM included its claims under CERCLA Section 113 prophylactically given that UCC might well argue at a later point that MPM has a CERCLA contribution claim under that section rather than a claim under CERCLA Section 107(a) and given the probability that a suit or settlement may soon give rise to such a claim.   Without a contribution claim under CERCLA Section 113, it would be undeniable that MPM's state law claims are not preempted.  *See New York v. West Side Corp.*, 790 F. Supp.2d 13, 22-28 (E.D.N.Y. 2011).  Given the lack of an established factual record in the current posture, it would be an inefficient use of judicial resources to rush to dismiss state law claims based on a CERCLA Section 113 claim that may or may not exist now and may or may not come into existence in the near future.

[3] The *Bedford* court was especially clear that CERCLA does not have broad preemptive effects even as it carved out a narrow exception to the general rule.  *See Bedford*, 156 F.3d at 426 (finding that "CERCLA as a whole does not expressly preempt state law" and "it was not part of the legislative purpose that CERCLA be a comprehensive regulatory scheme occupying the entire field of hazardous wastes, nor does CERCLA prevent the states from enacting laws to supplement federal measures relating to the cleanup of such wastes.").

allowed the court to make a definitive determination that the defendants were liable to the

plaintiff under CERCLA Section 113 and that, because that liability arose from a settlement

triggering the contribution protection of CERCLA Section 113(f)(2), there was an actual conflict

between the contribution available under CERCLA Section 113 and under state law.

      In the *Bedford* case, the trial court reached the issue of preemption after trial and found

that the state law claims allowed no damages not also recoverable under CERCLA. *See Bedford*,

156 F.3d at 422, 426. The Second Circuit elaborated that in such circumstances, where

defendants were liable under CERCLA Section 113 and the state law claims were co-extensive

with the CERCLA claims, the state law claims were preempted. *See id.* Likewise, in *Niagra*

*Mohawk*, the court reached issue of preemption after twelve years of litigation, not on a motion

to dismiss, and the court's holding was premised on a finding, based on a fully developed record,

that the costs sought under the state law claims all "f[e]ll within CERCLA". *See Niagara*

*Mohawk*, 596 F.3d at 119, 139.[4]

      Here, there is no record on which this Court could determine that MPM's CERCLA

claim is one for contribution under Section 113(f) that could potentially conflict with state law

claims rather than a claim for cost recovery under Section 107(a), which would not raise

preemption issues. *See West Side Corp.*, 790 F. Supp. 2d at 22-28. Nor is there any record on

which the Court could conclude that there are no damages or costs available under its state law

---

[4] *DVL, Inc. v. General Electric Co.*, 811 F. Supp. 2d 579, 583, 587 (N.D.N.Y. 2010) (Kahn, J.), also does
not support UCC's position. In *DVL*, the Court granted summary judgment to defendants on CERCLA and state law
claims after the plaintiff had failed, despite two years of discovery, to establish the defendants' liability, even under
CERCLA's relaxed standards. *Id.* at 594-95. As an alternative ground for its holding on the state law claims, the
Court found that DVL sought the same relief under CERCLA and its indemnification claim and that CERCLA
preempted such double recovery. *Id.* at 596. At least two other courts have noted that the summary judgment stage
is a more appropriate time to determine preemption because the development of a record is important to assessing
the extent of potential double recovery. *See West Side Corp.*, 790 F. Supp. 2d at 24; *New York v. Hickey's Carting,*
*Inc.*, 380 F. Supp. 2d 108, 115 (E.D.N.Y. 2005).

claims that are not also available under MPM's CERCLA's contribution claim in the event that

the Court determines that MPM's CERCLA claim is one for contribution under CERCLA

Section 113.  In the absence of such an established evidentiary record, UCC's motion to dismiss

MPM's state contribution and indemnification claims on preemption grounds cannot succeed.

*See, e.g.*, *Volunteers of Am. Of W. N.Y. v. Heinrich*, 90 F. Supp. 2d 252, 257-58 (W.D.N.Y.

2000) (allowing state law claims to proceed on the grounds that they may recover different

damages); *New York v. Ametek, Inc.*, 473 F. Supp. 2d 432, 434 (S.D.N.Y. 2007) (denying a

motion to dismiss state law claims as preempted by CERCLA because the damages recoverable

under CERCLA were "not identical to the set of damages recoverable under state law"); *West

Side*, 790 F. Supp. 2d at 26 ("it would seem imprudent to dismiss state law claims outright on

Rule 12 because of a mere *potential* for double recovery").

    Indeed, preemption claims such as those raised by UCC are routinely denied when they

are raised in a motion to dismiss because of uncertainty as to whether state law claims will

ultimately be coextensive with CERCLA claims.  In *Ametek*, the Court denied the defendant's

12(b)(6) motion because the plaintiff's CERCLA claims might be barred by failure to comply

with the National Contingency Plan, 40 C.F.R. Part 300, a bar that would not apply to state law

claims.[5]  473 F. Supp. at 434 (were CERCLA treated as the "exclusive means of recovering in

this area" that would be "in effect . . . field preemption . . . [which] does not apply in the case of

CERCLA").  In *Volunteers of Am.*, the Court likewise denied the defendant's 12(b)(6) motion to

dismiss state law claims because "CERCLA does not prevent a plaintiff from recovering

_____

    [5] CERCLA claims allow recovery for response costs that are "not inconsistent with the national
contingency plan."  CERCLA Section 107(a)(4), 42 U.S.C. § 9607(a)(4) (2010).  The national contingency plan is,
among other things, a guideline for how to respond to releases of hazardous substance.  *See* CERCLA Section 105,
42 U.S.C. § 9605 (2010); 40 C.F.R. 300 *et seq.* (2011).  State law claims do not include such an element.

damages under state law that are not duplicative of the damages it recovers under CERCLA." 90 F. Supp. 2d at 257-58; *see also New York v. Hickey's Carting, Inc.*, 380 F. Supp. 2d 108, 115 (E.D.N.Y. 2005) (denying motion to dismiss state law claims and holding that "the case for preemption based on the likelihood of double recovery [is] stronger . . . at the summary judgment stage as opposed to the pleading stage").

Simply because MPM has sought "all costs and expenses incurred by MPM as a result of UCC's disposal and releases of hazardous substances at the Sistersville Site" under both its common law and CERCLA claims does not mean that the relief available under both types of claims will necessarily be coextensive. The claims can involve different elements and may encompass different portions of the total costs incurred by MPM. As noted in *Ametek*, *Hickey's*, and *West Side*, there is a real possibility that state law claims will allow for recovery different than that provided for under CERCLA because of CERCLA's requirement that response costs not be inconsistent with the National Contingency Plan. *See Ametek*, 473 F. Supp. at 434; *Hickey's*, 380 F. Supp. 2d at 115 (holding that it was premature to preempt state law claims where a CERCLA claim may "fail in whole or in part" based on failure to demonstrate compliance with the National Contingency Plan); *West Side*, 790 F. Supp. 2d at 26. MPM's state law claims may also expand beyond CERCLA in other ways, for example, in the extent to which they allow recovery of attorney's fees and costs. More broadly, although MPM is confident that all elements of its CERCLA claims are met, at this stage MPM's CERCLA claims have not been tested by UCC (who has not yet even answered the Complaint). Thus, discovery may clarify whether MPM's CERCLA claim is under Section 107(a), Section 113(f), or both, and whether MPM's CERCLA and state law claims will provide for the same recovery.

**B.       Preemption Is Not Warranted In The Absence Of A CERCLA Settlement**

Even if there were an established record, UCC's preemption argument would still fail. The *Bedford* and *Niagara Mohawk* decisions expressly turned on CERCLA settlement issues that are not present here.  Specifically, the contribution claims in those cases arose from the plaintiff's settlement of its CERCLA liability with the United States or a state.  In those cases, the preemption rulings were based on a concern that the availability of state law contribution might interfere with CERCLA's strong policy of encouraging settlements.  For that reason, the *Bedford* Court found that allowing state contribution claims might circumvent the protection from contribution claims provided to settling parties under CERCLA Section 113(f)(2) and thereby diminish the incentives CERCLA created for settlement, thus disturbing the "carefully crafted settlement system [of CERCLA Section 113(f)(2), and] creating an actual conflict . . . between CERCLA and state common law causes of action."  *Id.* at 427.

Cases decided after *Bedford* and *Niagra Mohawk* have made clear that those cases were narrowly decided and do not apply where, as here, the state law claims do not interfere with CERCLA's settlement incentivizing framework.  In *Durham Mfg. Co. v. Merriam Mfg. Co*, where a private plaintiff brought CERCLA and state law indemnification claims, the court explicitly found that seeking contribution from "other *non-settling* PRP's. . . concurrently with [claims] under § 113(f)(1) of CERCLA does not conflict with the settlement scheme of CERCLA."  128 F. Supp. 2d 97, 103 (D. Conn. 2001).  Therefore, the court stated that "The conflict that existed in *Bedford Affiliates* is not present."  *Id.*  In *West Side*, the Court conducted a thorough analysis and determined that the preemption analysis of *Bedford* and *Niagara Mohawk* was not applicable where CERCLA's settlement incentives were not implicated as a result of a prior settlement: "[T]he concern that fueled *Bedford* was the possibility that, after settling their

liability with the government, PRPs could later be subject to disproportionate liability inconsistent with the settlement provisions of CERCLA if state law indemnification and restitution actions were allowed to continue."  790 F. Supp. 2d at 22.[6]

Put simply, "[i]n the absence of any true danger that allowing . . . common law claims for indemnity and restitution alongside [a] CERCLA cost recovery action will undermine the settlement incentives set forth in [CERCLA Section 113], *Bedford*'s holding does not apply." *Hickey's*, 380 F. Supp. 2d at 114.  Because there is no evidentiary record here and because no settlement of CERCLA liability for the Site has occurred, there is no basis on a motion to dismiss to conclude that there is preemption.

III.    **MPM HAS PLED FACTS SUFFICIENT TO ASSERT CONTRIBUTION AND INDEMNIFICATION CLAIMS AND THOSE CLAIMS ARE RIPE**

MPM is entitled to contribution and indemnification for costs already expended by MPM in responding to UCC's release of hazardous substances at the Sites and is entitled to declaratory relief with respect to any such future costs.[7]  Contrary to UCC's contention, it is well-settled that a plaintiff seeking contribution pursuant to CERCLA Sections 107(a) and 113(f), and under a common law action for indemnification, is entitled to "declaratory judgment establishing the

_____

[6] UCC attempts to distinguish *West Side* and *Hickey's* on the grounds that they involve claims brought by governmental entities, but there is no merit to that distinction.  The question in every case is whether the actual conflict described in *Bedford* exists – that is, whether the settlement incentives of CERCLA Section 113(f)(2) are disturbed by allowing parties to bring state law claims.  Because the settlement incentives are only affected where claims are brought after a party has settled with a government entity and received protection from future contribution claims, that is the true distinguishing factor.  That *West Side* and *Hickey's* both involve government enforcement actions is simply a result of the reality that many CERCLA actions filed prior to some form of settlement involve government enforcement.  That the rationale is not limited to such situations is demonstrated by the holding in *Durham*, 128 F. Supp. 2d at 103.

[7] Although MPM does not concede the point, MPM accepts for the purposes of this motion that the contribution and indemnity claims in this action are governed by New York law.

rights and liabilities of all parties regarding contaminated sites, as well as a defendant's

obligations for *future* response costs." *New York v. Solvent Chem. Co.*, 664 F.3d 22, 27 (2d Cir.

N.Y. 2011) (emphasis supplied); *Prisco v. New York*, 902 F. Supp. 374, 392 (S.D.N.Y. 1995);

*Arawana Mills Co. v. United Technologies Corp.*, 795 F. Supp. 1238, 1247 (D. Conn. 1992).  *Cf.*

*Cadillac Fairview/Cal., Inc. v. Dow Chem., Co.*, 840 F.2d 691, 696 (9th Cir. 1988).  As such,

MPM has properly asserted a claim for declaratory judgment "that UCC is liable for costs and

damages incurred or to be incurred by MPM in connection with UCC's disposal and release of

hazardous substances at the Sisterville facility . . . ."  Compl. ¶ F.

  Not only is MPM's claim for declaratory relief entirely proper, it also is ripe.[8]  Where a

plaintiff "has alleged that there was a release of hazardous substances on the Property during the

time [that the defendants owned or operated it], Plaintiff has alleged 'the occurrence of the

essential facts establishing its right to a declaratory judgment.'"  *Prisco*, 902 F. Supp. at 392

(quoting *Awawana Mills*, 795 F. Supp. at 124).  Although UCC argues that MPM's claim for

indemnification will not be ripe until "liability has actually accrued," that is not the law.  *See*

*Solvent Chem. Co.*, 664 F.3d at 27; *Prisco*, 902 F. Supp. at 392.  Indeed, one of the two cases

relied on by UCC establishes that a plaintiff is entitled to declaratory judgment on the issue of

liability and indemnity where "the indemnification requested was for the cost of cleaning up

---

[8] The standard applicable to assessing the ripeness of claims for declaratory relief is well established.  "In a case of actual controversy . . . any court of the United States . . . may declare the rights and other legal relations of any interested party."  28 U.S.C. § 2201(a) (2011).  A request for declaratory judgment is ripe if "there is a substantial controversy . . . of sufficient immediacy and reality."  *Olin Corp. v. Consolidated Aluminum Corp.*, 5 F.3d 10, 17 (2d Cir. 1993) (citing *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S. Ct. 510, 512 (1941)).  "Whether a matter is sufficiently immediate and real is a question that prohibits a single rule or answer, but rather requires a case by case analysis."  *Kidder, Peabody & Co. Inc. v. Maxus Energy Corp.*, 925 F.2d 556, 562 (2d Cir. 1991).  "That liability may be contingent does not necessarily defeat jurisdiction in a declaratory judgment action.  Rather courts should focus on the practical likelihood that the contingencies will occur."  *Associated Indem. Corp. v. Fairchild Indus. Inc.*, 961 F.2d 32, 35 (2d Cir. 1992).

damage to property . . . [and] [e]ither the moving parties had already incurred at least some expenses in cleaning up the property, or it was highly likely that they would incur the expenses in the near future." *Solow Building Co. v. ATC Assoc.*, 388 F.Supp. 2d 136, 140-41 (E.D.N.Y., 2005) (internal citations omitted). *Solow Building Co.* goes on to state that such a claim for declaratory judgment is ripe "despite the fact that the federal government had not yet, and might never have, brought suit to require the parties to pay for cleaning up the contaminated properties." *Id.* at 139. All that is required is that the parties were "aware" of the contamination. *Id.* at 141; *cf. Georgia-Pacific Consumer Prods., LP v. Int'l Paper Co.*, 566 F. Supp. 2d 246, 255-56 (S.D.N.Y. 2008) (where contamination is found on property, action for indemnification is ripe even if the federal government has not yet initiated a CERCLA suit).[9]

MPM has alleged, and UCC cannot dispute, that UCC owned the property at the time there was a release of hazardous PCBs at the Sisterville site. Compl. ¶¶ 7-13. MPM has already incurred hundreds of thousands of dollars in costs to investigate and remediate contamination from the PCBs released by UCC. Compl. ¶ 16. Moreover, given both (1) the strict liability nature of CERCLA and the ability of the United States or West Virginia to order MPM to respond to, or pay for responses to, UCC's past releases of hazardous substances at the site and (2) the legal obligations to respond to UCC's past releases of hazardous substances imposed on MPM by other applicable law (including but not limited to the Toxic Substances Control Act, 15 U.S.C. §§ 2601-2697, and the Resource Conservation and Recovery Act, 42 U.S.C. §§ 6901-

---

[9] Although the court in *Solow* did eventually dismiss the indemnification claim, it did so not on ripeness grounds, but on the basis that plaintiff would never be able to show likelihood of personal injury from exposure to asbestos. The other case relied upon by UCC – *Armored Group, LLC v. Homeland Sec. Strategies, Inc.* No. 07-CV-9694, 2009 U.S. Dist. LEXIS 61006, at *10 (S.D.N.Y. Apr. 20, 2009) – is likewise to no avail. That case holds that "New York law clearly provides that a claim for indemnification or contribution is premature where there has been neither entry of judgment nor payment." 2009 U.S. Dist. LEXIS at *10 (quoting *IntelliSec v. Firecom, Inc.*, No. 00 Civ. 3557 (ILG), 2001 U.S. Dist. LEXIS 2619 at *12 (E.D.N.Y. 2001)). Here, there is an allegation that MPM has made a payment, for PCB sampling, which is sufficient to satisfy the ripeness test.

6992k),[10] it is "highly likely that [MPM will] incur . . . expenses in the near future." *Solow Building Co.*, 388 F. Supp. 2d at 141. Therefore, MPM has pled sufficient facts to establish a ripe claim for declaratory judgment on the issues of liability, indemnity and contribution. *Id. See Prisco*, 902 F. Supp. at 392; *Awawana Mills*, 795 F. Supp. at 124.

## IV.    MPM HAS SUFFICIENTLY STATED A NUISANCE CLAIM

In moving to dismiss MPM's state law claim for nuisance, UCC fails to note that the Supreme Court of Appeals of West Virginia has specifically expanded the scope of nuisance law to include claims such as the one brought by MPM. In *West Virginia ex rel. Smith v. Kermit Lumber & Pressure Treating Co.*, 200 W.Va. 221, 244-45, 488 S.E.2d 901, 924-25 (1997), the court expressly followed a Ninth Circuit decision, *Arcade Water Dist. v. United States*, 940 F.2d 1265 (9th Cir. 1991), that applied California law in holding that there may be inter-generational nuisance claims: "[p]laintiff's land may be subject to a continuing nuisance even though defendant's offensive conduct ended years ago." *Kermit Lumber*, 200 W.Va. at 244-45 (quoting *Arcade Water*, 940 F.2d at 1268 (quoting *Mangini v. Aerojet-General Corp.*, 230 Cal. App. 3d 1125, 1147, 281 Cal. Rptr. 827, 841 (Calif. Ct. App. 1991))).[11] In *Kermit Lumber*, the Supreme

---

[10] The Toxic Substances Control Act ("TSCA"), 15 U.S.C. §§ 2601-2697, places certain legal obligations on parties relative to PCB contaminated materials, including obligations to take response actions. MPM operates the Site under a permit issued pursuant to the Resource Conservation and Recovery Act, 42 U.S.C. §§ 6901-6992k, which places additional requirements on MPM relative to responding to and reporting the discovery of releases of hazardous substances. Although UCC contends that MPM was not under any compulsion when it incurred the cost of PCB sampling, that contention ignores TSCA. As stated in its complaint, MPM took cleanup "actions unofficiously and with the intent to seek recovery." Compl. ¶ 49. Given that UCC disposed of hundreds of thousands of pounds of PCBs in unlined lagoons at the Site for over two decades, UCC cannot be heard to claim that MPM was acting voluntarily when it investigated the extent of that PCB contamination as it was required to do under the TSCA. *See generally* 40 C.F.R. Part 761 (providing extensive regulations governing the handling and remediation of PCBs and PCB contaminated materials). Compliance with TSCA, a statute that imposes significant criminal and civil penalties for violation, provides sufficient compulsion to give rise to a claim for contribution or indemnification under New York law. *See* TSCA § 16, 15 U.S.C. § 2615 (2010).

[11] In *Arcade Water Dist.*, the Ninth Circuit found that even though the defendant had closed operations many years before, and the acts causing initial contamination of the property were therefore in the past, the nuisance

11

Court of Appeals of West Virginia found that "as long as [a contaminant] remains on the [defendant's property] in amounts above the regulatory limits and . . . the harm or nuisance continues" a nuisance claim may be brought. *Id*. at 245; *see also Taylor v. Culloden Pub. Serv. Dist.*, 214 W. Va. 639, 647, 591 S.E.2d 197, 205 (2003). As the West Virginia court explained, environmental contamination may continue to "leach" or seep long into the future and cause a nuisance after its initial release. *Kermit Lumber*, 200 W.Va. at 245.[12]

UCC does not cite any specific West Virginia case law for the proposition that a claim for nuisance cannot lie, as here, between different generations of owners of property. While UCC points to general propositions about nuisance and cases from other jurisdictions, it does not mention the holding in *Kermit Lumber*. Nor does UCC mention that West Virginia courts have repeatedly lauded the flexibility and significance of nuisance claims relating to environmental issues. *See, e.g Sharon Steel Corp. v. City of Fairmont*, 175 W. Va. 479, 483, 334 S.E.2d 616, 621 (1985) (nuisance is a "flexible area of law that is adaptable to a wide variety of factual situations"). The Supreme Court of Appeals of West Virginia has specifically stated that "Nuisance law has been particularly effective in addressing environmental problems." *Id*. at 484. The Supreme Court of Appeals of West Virginia has found that nuisance law is central to West Virginia's efforts to address environmental problems generally and is a critical means of making remedies available to plaintiffs suffering from environmental harms. *See Taylor v. Culloden Pub. Serv. Dist.*, 214 W. Va. 639, 648, 591 S.E.2d 197, 206 (2003) ("Were it not for the

_____

continued as long as the contamination it had caused was interfering with the property rights of others. *Arcade Water Dist.*, 940 F.2d at 1268.

[12] It is also worth noting that the nuisance at issue may be acting through groundwater or surface water contamination caused by UCC. To the extent that a more developed record could establish this fact, the nuisance complained of would not, strictly speaking, be a nuisance originating from the same property interest affected by the nuisance, which seems to be the core complaint UCC raises with respect to MPM's claim.

availability of nuisance actions as a remedy, it seems certain an inestimable number of business and private actions that have deleterious health and environmental results as a byproduct of their operations would have continued unabated.").

In the face of this case law, UCC's reliance on general statements of nuisance law and case law from other jurisdictions is not sufficient.   This is particularly true since the case that UCC relies upon most heavily, *Moore v. Texaco, Inc.*, 244 F.3d 1229, 1233 (10th Cir. 2001), specifically notes that California allows inter-generational nuisance claims between owners of the same property and cites *Mangini v. Aerojet-Gen. Corp.*, 230 Cal. App. 3d 1125, 281 Cal. Rptr. 827, 833 (Cal. Ct. App. 1991) for that position.  *Mangini* was the explicit basis for the decision in *Arcade Water Dist.*, 940 F.2d at 1265 that was later adopted by West Virginia in *Kermit Lumber & Pressure Treating Co.*, 200 W.Va. 221 at 244-45.  Under these circumstances, UCC is not entitled to dismissal of MPM's nuisance claim under West Virginia law.  MPM is entitled to develop a record and have its cause of action for nuisance tested on that record.

13

## CONCLUSION

For the foregoing reasons, MPM respectfully requests that the Court deny UCC's Motion to Dismiss in its entirety.

DATED:  May 17, 2012

Respectfully submitted,

FOLEY HOAG LLP

By: _____

Robert S. Sanoff, Esq. (Bar Roll No. 106915)
Adam P. Kahn, Esq. (Bar Roll No. 106913)
Zachary Gerson, Esq. (Bar Roll No. 106914)
Foley Hoag LLP
155 Seaport Boulevard
Boston, MA 02210
(617) 832-1000
rsanoff@foleyhoag.com
akahn@foleyhoag.com
zgerson@foleyhoag.com

*Attorneys for Plaintiff*
*MPM Silicones, LLC*

Of Counsel:
Margaret J. Gillis, Esq. (Bar Roll No. 101776)
Whiteman Osterman & Hanna, LLP
One Commerce Plaza
Albany, NY 12260
(518) 487-7600

14

B4011991v3