UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

MPM SILICONES, LLC,

                              Plaintiff,

        -against-                                    1:11-CV-1542 (LEK/ATB)

UNION CARBIDE CORPORATION,

                              Defendant.
_____

## MEMORANDUM-DECISION and ORDER

## I.    INTRODUCTION

Plaintiff MPM Silicones, LLC ("Plaintiff" or "MPM"), commenced this action on December 30, 2011, by filing a Complaint against Defendant Union Carbide Corporation ("Defendant" or "Union Carbide") seeking to recover the costs Plaintiff incurred in identifying and responding to Defendant's release of hazardous chemicals under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA")[1] as well as under several state-law causes of action.  Dkt. No. 1 ("Complaint") ¶¶ 1-2, 31-71.

Presently before the Court is Defendant's Motion under Federal Rule of Civil Procedure 12(b)(6) to dismiss certain of Plaintiff's state-law causes of action as preempted by CERCLA and deficient under the applicable state law.  Dkt. No. 23 ("Motion").  For the following reasons, the Court grants the Motion in part and denies the Motion in part.

## II.    BACKGROUND

### A.  Factual Background

For the purposes of deciding Defendant's Motion to dismiss, the Court accepts as true the

_____

[1] 42 U.S.C. § 9601 et. seq.

following facts taken from Plaintiff's Complaint.

Union Carbide is a New York corporation with its principal place of business in Houston, Texas.  Compl. ¶ 4.  In 1953, Union Carbide developed fifty acres of a 1,300-acre plot of farmland located near Sistersville, West Virginia ("the Sistersville Site" or "the Site") for use as a chemical manufacturing facility.  Id. ¶ 7-8.  Over the approximately forty years that Union Carbide owned the Sistersville Site, Union Carbide used it to produce various chemical products, primarily silanes and silicones.  Id. ¶ 9.  In the manufacturing of these products, from approximately the 1950s through the 1970s, Union Carbide used hundreds of thousands of pounds of polychlorinated biphenyls ("PCBs").  Id. ¶ 11.  Union Carbide disposed of the PCBs and other hazardous wastes used or produced during this period at several locations within the Sistersville Site, including in unlined lagoons.  Id.

In the late 1970s and early 1980s, Union Carbide conducted investigations of its historical waste-handling practices and its reporting obligations under newly enacted environmental laws such as the Resource Conservation and Recovery Act of 1976 ("RCRA"),[2] the Toxic Substances Control Act ("TSCA"),[3] and CERCLA.  Id. ¶ 12.  Through these investigations, which included PCB testing, Union Carbide determined that it had used hundreds of thousands of pounds of PCBs at the Sistersville Site.  Id. ¶¶ 12-13.  Union Carbide did not, however, disclose the presence and historical use of PCBs to federal regulators as it was required to do under CERCLA and under the RCRA as part of its Part B Permit application process, which began in approximately 1980 and extended throughout the decade.  Id. ¶ 13.

--------

[2] Id. § 6901 et seq.

[3] Id. § 2601 et seq.

2

Union Carbide was required to take certain corrective actions under its Part B Permit, including periodic groundwater monitoring and the development and maintenance of a number of Solid Waste Management Units ("SWMUs"). Id. ¶ 18. All of the hazardous waste in most of the SWMUs at the Sistersville Site was deposited there by Union Carbide alone. Id. ¶ 19. In addition, from 1979 until 1993, Union Carbide deposited solid waste from the Sistersville Site and from other facilities owned by Union Carbide in a landfill at the Site called Landfill No. 2. Id. That landfill is scheduled to be closed "in the near future." Id.

Union Carbide sold the Sistersville Site in 1993. In 2006, after a series of further sales and mergers, the Site was acquired by MPM, a New York limited liability corporation with its principal place of business in Waterford, New York. Id. ¶¶ 3, 14. MPM has since incurred various costs associated with Union Carbide's previous ownership and use of the Site. Id. ¶ 15. In connection with its effort to install a new wastewater treatment facility on the Sistersville Site, MPM sampled soils in the vicinity of Union Carbide's former unlined lagoons and discovered high concentrations of PCBs. Id. ¶ 15. This soil sampling has caused MPM to incur hundreds of thousands of dollars in costs to date, and Union Carbide, the only entity to have used PCBs at the Sistersville Site, has declined to reimburse MPM for these costs. Id. ¶¶ 16-17. Union Carbide has also refused to contribute to the multimillion-dollar cost of closing Landfill No. 2 or to the cost of maintaining the SWMUs and conducting the necessary groundwater monitoring. Id. ¶¶ 19-20.

**B. Procedural Background**

Plaintiff filed a Complaint on December 30, 2011, seeking to recover the costs it incurred and expects to incur as a result of Union Carbide's use of the Sistersville Site and its failure to meet its reporting requirements under federal and state law. Compl. The Complaint asserts nine causes

of action styled as Counts I through IX.  Id. ¶¶ 21-71.  Counts I through III arise under CERCLA:

Count I is for recovery of costs under§ 107(a);[4] Count II is for contribution under § 113(f);[5] and

Count III is for declaratory relief as to future costs under § 113(g)(2).  Id. ¶¶ 21-30.  Counts IV

through IX arise under state law and are before the Court under its supplemental jurisdiction: Count

IV is for negligence; Count V is for strict liability; Count VI is for restitution; Count VII is for

declaratory judgment as to future restitution; Count VIII is for indemnity and/or contribution; and

Count IX is for private nuisance.  Id. ¶¶ 31-71.

On April 16, 2012, Defendant filed a pre-answer Motion under Federal Rule of Civil

Procedure 12(b)(6).  Mot.  In its Motion, Defendant seeks to dismiss Counts VI through VIII

because they are preempted by CERCLA; Count VIII on the additional ground that it is not ripe; and

Counts VIII and IX on the additional ground that they are deficient under the applicable state law.

Defendant's Memorandum of law in support (Dkt. No. 23-1) ("Mem.") at 2.  Plaintiff filed a

Response in opposition to the Motion on May 17, 2012, and Defendant filed a Reply to the

Response on June 6, 2012.  Dkt. Nos. 27 ("Response"), 28 ("Reply").

On February 25, 2013, the Court issued an Order directing Plaintiff to file additional briefing

addressing whether its CERCLA § 113(f) claim is barred by the Supreme Court's decision in

Cooper Industries, Inc. v. Aviall Services, Inc., 543 U.S. 157 (2004), and the Second Circuit's

decision in W.R. Grace & Co.-Conn. v. Zotos International Inc., 559 F.3d 85 (2009).  Dkt. No. 34

("the February Order").  Plaintiff complied with the February Order by filing a brief on March 4,

2013.  Dkt. No. 35 ("Supplemental Brief").

---

[4] Id. § 9607(a).

[5] Id. § 9613(f).

4

### III.    LEGAL STANDARD

When a court evaluates a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), it must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the nonmovant's favor. Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 237 (2d Cir. 2007). Mere "conclusions of law or unwarranted deductions of fact" need not be accepted as true. First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 771 (2d Cir. 1994). A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Plausibility requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]," Twombly, 550 U.S. at 556, and "more than a sheer possibility that a defendant has acted unlawfully," Iqbal, 556 U.S. at 678. This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned the-defendant-unlawfully-harmed-me accusation." Id. at 678 (quoting Twombly, 550 U.S. at 556). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. Id. (internal quotation marks omitted). Where a court is unable to infer more than the mere possibility of the alleged misconduct based on the pleaded facts, the pleader has not demonstrated that he is entitled to relief and the complaint is subject to dismissal. See id. at 679.

### IV.    DISCUSSION

#### A.  CERCLA Claims

CERCLA was enacted in its original form in 1980 in response to New York's Love Canal

Disaster.[6]  It is a remedial statute "designed to encourage prompt and effective cleanup of hazardous waste sites" by "assuring that those responsible for any damage, environmental harm, or injury from chemical poisons bear the costs of their actions."  Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc., 596 F.3d 112, 120 (2d Cir. 2010) (quoting S. Rep. No. 96-848, at 13 (1980)).  CERCLA empowers the federal government and the states to "clean up a contaminated area [themselves] . . . or [to] compel responsible parties to perform the cleanup."  Cooper Indus., 543 U.S. at 161.  In either case, the government may recover its response costs from a potentially responsible party ("PRP")[7] under CERCLA § 107.  Id.  Section 107(a) provides that PRPs are liable for, among other things, "all costs of removal or remedial action incurred by the United States

---

[6] For a full description of the disaster, see Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc., 596 F.3d 112, 120 n.5 (2d Cir. 2010) (citing Michael H. Brown, *Love Canal and the Poisoning of America*, Atlantic Monthly, Dec. 1979, at 33).

[7] Section 107(a) lists four broad categories of persons as PRPs, by definition liable to other persons for various costs under the statute:

(1) the owner and operator of a vessel or facility,
(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,
(3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and
(4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance . . . .

42 U.S.C. § 9607(a)(1)-(4).

Government . . . not inconsistent with the national contingency plan [("NCP")]."[8]  42 U.S.C. § 9067(a)(4)(A).

Section 107(a) also provides that PRPs are liable for "any other necessary costs of response incurred by any other person consistent with the [NCP]."  42 U.S.C. § 9067(a)(4)(B); Bedford Affiliates v. Sills, 156 F.3d 416, 423 (2d Cir. 1998).  Resolving confusion among the circuits, the Supreme Court held in United States v. Atlantic Research Corp., 551 U.S. 128, 135-36 (2007), that the phrase "any other person" referred not only to innocent property owners under § 107(b) but also to PRPs who voluntarily clean a site.  Thus, PRPs can themselves sue other PRPs under § 107(a) to recover CERCLA cleanup costs.  Id.

In addition, PRPs may seek contribution from other PRPs under § 113(f) for costs incurred in responding to hazardous waste contamination.  Id. at 139.  "As originally enacted in 1980, CERCLA contained no provision expressly providing for a right of action for contribution."  Cooper Indus., 543 U.S. at 162.  CERCLA was later amended in the Superfund Amendments and Reauthorization Act of 1986 ("SARA")[9] to provide the contribution remedy that many district courts had already read into the statute.  Niagara Mohawk, 596 F.3d at 127; see also Schaefer v.

---

[8]  "The [NCP] specifies procedures for preparing and responding to contaminations and was promulgated by the Environmental Protection Agency (EPA) pursuant to CERCLA § 105 . . . .  The plan is codified at 40 CFR pt. 300 (2004)."  Cooper Indus., 543 U.S. at 161 n.2; see also Niagra Mohawk, 596 F.3d at 121 ("[The NPC is] the federal government's roadmap for responding to the release of hazardous substances.").

CERCLA § 107 "distinguishes between two kinds of response: remedial actions—generally long-term or permanent containment or disposal programs—and removal efforts—typically short-term cleanup arrangements."  Schaefer v. Town of Victor, 457 F.3d 188, 195 (2d Cir. 2006) (quoting New York v. Shore Realty Corp., 759 F.2d 1032, 1040 (2d Cir. 1985)) (internal quotation marks omitted).  "Removal actions" and "remedial actions" are fully defined in CERCLA § 101(23), 42 U.S.C. § 9601(23), and § 101(24), 42 U.S.C. § 9601(24), respectively.

[9]  Pub. L. No. 99-499, 100 Stat. 161 (codified as amended at 42 U.S.C. § 9613).

Town of Victor, 457 F.3d 188, 196 (2d Cir. 2006) ("[S]everal district courts held that, 'although CERCLA did not mention the word 'contribution,' such a right arose either impliedly from provisions of the statute, or as a matter of federal common law.'" (quoting Cooper Indus., 543 U.S. at 162 (collecting cases))).  That amendment resulted in § 113(f), which was designed to "clarif[y] and confirm . . . the right of a person held jointly and severally liable under CERCLA to seek contribution from other potentially liable parties, when the [PRP] believes that it has assumed a share of the cleanup or cost that may be greater than its equitable share under the circumstances." Id. (quoting H.R. REP. NO. 99-253(I), at 79 (1985), reprinted in 1986 U.S.C.C.A.N. 2835, 2861).

Finally, with the enactment of § 113(f), Congress created a statutory settlement scheme that "was put in place to aid the expeditious resolution of environmental claims."  Bedford, 156 F.3d at 427.  "To accomplish this objective Congress employed incentives for [PRPs] to settle and strong disincentives for non-settling [PRPs]."  Id.  Section 113(f)(2) provides that

> [a] person who has resolved its liability to the United States or a State in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement.  Such settlement does not discharge any of the other potentially liable persons unless its terms so provide, but it reduces the potential liability of the others by the amount of the settlement.

"Hence, [PRPs] who choose to settle gain protection from contribution, enjoy potentially favorable settlement terms, and retain the ability to seek contribution from other [PRPs]."  Id.  Nonsettling PRPs, however, "are barred from seeking contribution from the settling [PRPs] and thereby face potentially disproportionate liability."  Id. (citing In re Reading Co., 115 F.3d 1111, 1119 (3d Cir. 1997)).

### 1.  Plaintiff's CERCLA § 113(f) Claim

"[T]he remedies available in §§ 107(a) and 113(f) complement each other by providing

causes of action 'to persons in different procedural circumstances.'" <u>Atl. Research</u>, 551 U.S. at 139

(citing <u>Consol. Edison Co. of N.Y. v. UGI Utils., Inc.</u>, 423 F.3d 90, (2d Cir. 2005)).  In <u>Cooper</u>

<u>Industries</u>, 543 U.S. at 165-68, the Supreme Court held that § 113(f)(1) "authorizes contribution

claims only 'during or following' a civil action under § 106 or § 107(a)."  Therefore, the PRP in that

case could not avail itself of a claim under § 113(f)(1) because it was neither currently subject to

such an action nor had it previously been subject to such an action.  <u>Id.</u> at 168.

Section 113(f)(3)(b) claims are similarly limited.  The Second Circuit has held that "'only

when liability for CERCLA claims, rather than some broader category of legal claims, is resolved'

does section 113(f)(3)(b) create a right to contribution." <u>W.R. Grace</u>, 559 F.3d at 89 (quoting

<u>Consol. Edison</u>, 423 F.3d at 95).  Thus, unless a PRP has settled its CERCLA liability with the

federal or a state government, it has no § 113(f)(3)(b) claim for contribution.  <u>Id.</u>; <u>see also</u> <u>Niagara</u>

<u>Mohawk</u>, 596 F.3d at 124-28 (considering whether the plaintiff's claims fit within the requirements

of § 107(a) or § 113(f)(3)(B)); <u>Seneca Meadows, Inc. v. ECI Liquidating, Inc.</u>, 427 F. Supp. 2d 279

(W.D.N.Y. 2006) (holding that consent orders between the owner of a landfill site and the New

York State Department of Environmental Conservation amounted to an "administrative settlement"

under § 113(f)(3)(B), and, thus, the owner could seek to recover from a PRP some of the costs that it

incurred in cleaning up contamination at the site).

Filling the gap left by these limitations on § 113(f), § 107(a) is available to a PRP to recover

CERCLA costs that it has incurred voluntarily.[10]  <u>Atl. Research</u>, 551 U.S. 128; <u>Schaefer</u>, 457 F.3d at

---

[10]  As the Second Circuit noted in <u>Niagra Mohawk</u>, however, the question remains
unanswered whether "a § 107(a) action could be pursued by a PRP that incurs clean up costs after
engaging with the federal or a state government, but is not released from any CERCLA liability."
596 F.3d at 127 n.17 (citing <u>Atl. Research</u>, 551 U.S. at 139 n.6).

198-203; see also Niagara Mohawk, 596 F.3d at 118 ("[B]ecause [the PRP] incurred response costs

as a result of a resolution of its CERCLA liability with the [New York Department of

Environmental Conservation], [the PRP] cannot seek recovery costs under § 107(a)(4)(B).").

The Supreme Court has further clarified the relationship between §§ 107(a) and 113(f), as

well as when a PRP may avail itself of one section or the other:

> Section 113(f)(1) authorizes a contribution action to PRPs with common liability
> stemming from an action instituted under § 106 or § 107(a).  And § 107(a) permits cost
> recovery (as distinct from contribution) by a private party that has itself incurred cleanup
> costs.  Hence, a PRP that pays money to satisfy a settlement agreement or a court
> judgment may pursue § 113(f) contribution.  But by reimbursing response costs paid by
> other parties, the PRP has not incurred its own costs of response and therefore cannot
> recover under § 107(a).  As a result, though eligible to seek contribution under § 113(f),
> the PRP cannot *simultaneously* seek to recover the same expenses under § 107(a). . . .
>         For similar reasons, a PRP [cannot] avoid § 113(f)'s equitable distribution of
> reimbursement costs among PRPs by instead choosing to impose joint and several
> liability on another PRP in an action under § 107(a).  *The choice of remedies simply
> does not exist.*

Atl. Research, 551 U.S. at 139-40 (emphasis added).  In sum, "[PRPs'] costs incurred voluntarily

are recoverable only by way of § 107(a)(4)(B), and [PRPs'] costs of reimbursement to another

person pursuant to a legal judgment or settlement are recoverable only under § 113(f)."  Id. at 139

n.6.

Even if Plaintiff's § 113(f) and § 107(a) claims were properly alleged in the alternative,[11]

---

[11] Federal Rule of Civil Procedure 8 permits a plaintiff to "state as many separate claims or
defenses as it has, *regardless of consistency*."  FED. R. CIV. P. 8(d)(3) (emphasis added).  "A party
may not, however, recover separately on inconsistent theories when one theory precludes the other
or is mutually exclusive of the other."  U.S. Bank Nat'l Ass'n v. Bank of Am., N.A., No. 12 Civ.
4873, 2012 WL 6136017, at *7 (S.D.N.Y. Dec. 11, 2012) (quoting Brookhaven Landscape &
Grading Co. v. J.F. Barton Contracting Co., 676 F.2d 516, 523 (11th Cir. 1982)) (internal quotation
marks omitted).  CERCLA § 107(a) and § 113(f) are plainly mutually exclusive: if a plaintiff
satisfies the prerequisites for bringing a claim under § 113(f), she cannot then proceed to recover the
same CERCLA costs under § 107(a).  See Atl. Research, 551 U.S. at 139-40.  The same is true in
reverse.  Nonetheless, mutually exclusive theories of recovery may proceed beyond the pleading

Plaintiff's § 113(f) claim could not be maintained as currently pleaded.  The Complaint fails to allege that Plaintiff currently is or previously has been subject to an action under § 106 or § 107(a) or that Plaintiff has settled its CERCLA liability.[12]  See generally Compl.  Therefore, under Cooper Industries and W.R. Grace, Plaintiff's Complaint is facially deficient as to its § 113(f) claim.

    The Court has the authority under Rule 12(b)(6) to dismiss a complaint *sua sponte* for "failure to state a claim upon which relief may be granted" if the complaint lacks an arguable basis either in law or fact.  Thomas v. Scully, 943 F.2d 259, 260 (2d Cir. 1991); Ideyi v. State Univ. of N.Y. Downstate Med. Cntr., No. 09-CV-1490, 2010 WL 3938411, at *7 (E.D.N.Y. Sept. 30, 2010) ("A district court's ability *sua sponte* to dismiss a complaint that lacks a basis in law or fact is well-established." (quoting Muka v. Murphy, 358 F. App'x 239, 241 (2d Cir. 2009))); Citadel Mgmt., Inc. v. Telesis Trust, Inc., 123 F. Supp. 2d 133, 146 (S.D.N.Y. 2000) ("[T]he Court has discretion to dismiss claims *sua sponte* pursuant to Rule 12(b)(6), particularly where it is clear that a plaintiff could not have prevailed on the facts as alleged in the complaint.").  Notice and an opportunity for the nonmovant to be heard are the only prerequisites to the Court's exercise of its inherent powers in this fashion.  Wachtler v. Cnty. of Herkimer, 35 F.3d 77, 82 (2d Cir. 1994); Thomas, 943 F.2d at

---

stage if one is alleged "in the alternative" of the other.  See U.S. Bank, 2012 WL 6136017, at *8 (dismissing a claim because the plaintiff failed to allege it in the alternative to another, mutually exclusive claim).  A plaintiff "need not use particular words to plead in the alternative," but only "as long as it can be reasonably inferred that this is what [she] is doing."  Id. (quoting G-I Holdings, Inc. v. Baron & Budd, 238 F. Supp. 2d 521, 536 (S.D.N.Y. 2002)) (internal quotation marks omitted).  Here, Plaintiff's Complaint asserts claims against Defendant under both § 107(a) and § 113(f).  There is nothing on the face of the Complaint, however, that would permit the Court to infer that one claim is alleged in the alternative to the other.

    [12] Nor is there any allegation of an agreement between Plaintiff and a federal or state agency of a kind that raises a question as to whether it constitutes a settlement under § 113(f)(3)(B).  See Seneca Meadows, 427 F. Supp. 2d 279 (deciding whether the consent decrees at issue were an "administrative settlement" within the meaning of § 113(f)(3)(B)).

260; Brooks v. Sposato, No. 11 CV 2598, 2012 WL 6756944, at *6 n.19 (E.D.N.Y. Nov. 26, 2012);

Bondi v. Grant Thornton Int'l (In re Parmalat Sec. Litig.), 377 F. Supp. 2d 390, 415 (S.D.N.Y.

2005).

      In its February Order, the Court directed Plaintiff to file additional briefing explaining why

its § 113(f) claim is not barred by Cooper Industries and W.R. Grace.  Feb. Order at 2.  Plaintiff

filed its Supplemental Brief on March 4, 2013.  Dkt. No. 35.  Thus, the Court has satisfied its duty

to provided Plaintiff with sufficient notice and a fair opportunity to be heard.  See Brady v. Marks, 7

F. Supp. 2d 247, 249 (W.D.N.Y. 1998) (relying on Herkimer to order the plaintiff to show cause

why his complaint should not be sua sponte dismissed by the court).

      In its Supplemental Brief, Plaintiff concedes that it has not yet been sued under §§ 106 or

107(a) and that it has not yet settled its CERLCA liability with the government.  Supp. Br. at 3.

Nevertheless, Plaintiff argues for two reasons that the Court should permit both its § 107(a) and

§ 113(f) claims to proceed to trial, when it will allegedly become clear which section applies in this

case.  Neither reason is convincing.  First, Plaintiff argues that its § 113(f) claim should go forward

because, under the current state of the law, it is unclear what happens when a PRP can satisfy the

requirements both of § 107(a) and of § 113(f) or when a PRP who has brought suit under § 107(a) is

itself sued by the government under § 107(a) during the pendency of that litigation.  Id. at 3.

Notwithstanding that the law may be unclear,[13] Plaintiff's concerns are speculative and do not,

therefore, serve as a basis for allowing its § 113(f) claim to proceed.  Second, Plaintiff argues that

its § 113(f) claim should proceed because that would be the most efficient course of action, as it

---

    [13] The Court, however, notes that the law is clearer than Plaintiff contends.  The Court
directs Plaintiff to the discussion of Atlantic Research, supra, but leaves further discussion of this
issue—if it be required—for another time.

would eliminate the potential need for later amendments to the pleadings.  Id.  The Court does not

find this to be the case.  Allowing an admittedly untenable claim to proceed on the mere possibility

that it might become viable in the future does little to promote efficiency.  In the meantime, while

the claim remains entirely speculative, the opposing party must still defend against it, and the Court

may need to engage in analysis that is purely hypothetical and prospective.[14]  Thus, if the claim

never becomes viable, both have expended time and effort (and, in the opposing party's case,

money) that they need not have expended.

Accordingly, Count II of Plaintiff's Complaint is *sua sponte* dismissed without prejudice.

### 2.  CERCLA § 107(a) and Preemption of Plaintiff's State-Law Claims

In its Motion, Defendant requests that the Court dismiss Counts VI through VIII of

Plaintiff's Complaint because CERCLA preempts these state-law claims.  Mem. at 5-8; Reply at 1-

5.  Because the Court *sua sponte* dismisses Plaintiff's § 113(f) claim, the question of whether

Plaintiff's state-law restitution, indemnification, and contribution claims are preempted by that

section is moot.  Plaintiff's § 107(a) claim remains, however, and therefore the Court must

determine whether § 107(a) requires dismissal of Counts VI through VIII on preemption grounds.

Congress's power to enact laws that preempt state and local law arises under the Supremacy

---

[14] Furthermore, an opinion engaging in such an analysis would likely constitute an unconstitutional advisory opinion.  See Marbury v. Madison, 5 U.S. (1 Cranch) 137 (1803); Letter from the Justices of the Supreme Court to President George Washington (Aug. 8, 1793), in STEWART JAY, MOST HUMBLE SERVANTS: THE ADVISORY ROLE OF EARLY JUDGES 179-80 (1997); Note, *Advisory Opinions and the Influence of the Supreme Court over American Policymaking*, 124 HARV. L. REV. 2064 (2011); see also Flast v. Cohen, 392 U.S. 83, 96 n.14 (1968).  This situation is easily distinguished from that of allowing alternatively pleaded claims to proceed to the summary-judgment stage or to trial.  In that situation, each claim's viability is disputed and unclear, whereas in this situation Plaintiff's § 113(f) claim is admittedly untenable under the current factual circumstances.

Clause of the U.S. Constitution.[15]  Courts have recognized three ways in which preemption may occur.  "First, Congres ddfds may in express terms declare its intention to preclude state regulation in a given area."  Bedford, 156 F.3d at 426 (citing Jones v. Rath Packing Co., 430 U.S. 519, 525 (1977)).  This type of preemption is termed "express" preemption.  "Second, preemption may be implied when federal law is 'sufficiently comprehensive to make reasonable the inference that Congress "left no room" for supplementary state regulation.'"  Id. (quoting Hillsborough Cnty. v. Automated Med. Lab., Inc., 471 U.S. 707, 713 (1985)).  This type of preemption is termed "field" preemption.  "Third, state law may be preempted 'to the extent that it actually conflicts with a valid federal statute."  Id. (quoting Ray v. Atlantic Richfield Co., 435 U.S. 151, 158 (1978)).  This type of preemption is termed "conflict" preemption and occurs either when "'compliance with both federal and state regulations is a physical impossibility,'"  id. (quoting Fla. Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 142-43 (1963)), or where state law "'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress,'"  id. (quoting Hines v. Davidowitz, 312 U.S. 52, 67 (1941)).  In any case, courts should exercise caution before finding that federal law preempts state or local law.  Id. (citing Int'l Paper Co. v. Ouellette, 479 U.S. 481, 490 (1987)).

Like the availability of §§ 107(a) and 113(f) to plaintiffs in certain procedural circumstances, the issue of whether these two sections preempt various state-law causes of action has been the subject of much litigation in this and other circuits.  The Second Circuit first considered CERCLA's preemption of state law in Shore Realty, holding that "[w]hile CERCLA expressly does not preempt state law, it precludes recovering compensation for the same removal costs or damages or claims

---

[15] U.S. CONST. art. VI, cl. 2.

under both CERCLA and state or other federal laws."  759 F.2d at 1041; see also Marsh v. Rosenbloom, 499 F.3d 165, 177 (2d Cir. 2007) ("While CERCLA does state that it applies '[n]otwithstanding any other provision or rule of law,' this clause refers only to substantive liability and does not express congressional intent to preempt state rules on how litigation proceeds, including a party's amenability to suit." (internal citations omitted)).  In so holding, the Second Circuit relied on two subprovisions of CERCLA § 114.[16]  Section 114(a) states that nothing in CERCLA "shall be construed or interpreted as preempting any State from imposing any additional liability or requirements with respect to the release of hazardous substances within such State."  42 U.S.C. § 9614(a).  The subsequent provision, § 114(b), states, however, that

> [a]ny person who receives compensation for removal costs or damages or claims pursuant to this chapter shall be precluded from recovering compensation for the same removal costs or damages or claims pursuant to any other State or Federal law.  Any person who receives compensation for removal costs or damages or claims pursuant to any other Federal or State law shall be precluded from receiving compensation for the same removal costs or damages or claims as provided in this chapter.

Id. § 9614(b).  This prohibition against recovering the same costs under both CERCLA and other federal or state laws would become known to later courts applying it as the "double recovery" bar. See Fitzgibbons v. City of Oswego, No. 5:10-CV-1038, 2011 WL 6218208, at *14 (N.D.N.Y. Dec. 13, 2011); New York v. West Side, 790 F. Supp. 2d 13, 25-28 (E.D.N.Y. 2011); New York v. Hickey's Carting, 380 F. Supp. 2d 108, 114-16 (E.D.N.Y. 2005).

Shore Realty was decided in 1985, one year before SARA amended CERCLA to add § 113(f).  The Second Circuit would address whether certain state-law claims are preempted by that section more than ten years later in Bedford.  In that case, the Second Circuit first rejected the notion

---

[16] 42 U.S.C. § 9614.

that "CERCLA . . . preempt[s] state law across the board," holding that "it was not part of the legislative purpose that CERCLA be a comprehensive regulatory scheme occupying the entire field of hazardous wastes, nor does CERCLA prevent the states from enacting laws to supplement federal measures relating to the cleanup of such wastes." Bedford, 156 F.3d at 426-27. In short, CERCLA does not preempt state law under a theory of field preemption. However, the Second Circuit went on to hold that CERCLA preempts state-law restitution and indemnification causes of action under a theory of conflict preemption. Id. at 427. After explaining that Congress had intended to create a statutory settlement scheme when it enacted § 113(f), the Second Circuit held that "it can easily be seen that instituting common law restitution and indemnification actions in state court would bypass this carefully crafted system, creating an actual conflict therefore between CERCLA and state common law causes of action." Id.

Bedford's preemption holding was revisited and ultimately extended in Niagara Mohawk. In that case, the Second Circuit held that at least when a PRP "did not incur costs outside of CERCLA, [it] has no grounds for contribution under New York law," explaining:

> Section 113 [of CERCLA] is intended to standardize the statutory right of contribution and, in doing so, avoid the possibility of fifty different state statutory schemes that regulate the duties and obligations of nonsettling PRPs who might be viewed as tortfeasors under the law of any particular state. Based on the text, § 113 was intended to provide the only contribution avenue for parties with response costs incurred under CERCLA. . . . Thus we conclude that state law contribution claims for CERCLA response costs conflict with CERCLA contribution claims and therefore are preempted.

Niagara Mohawk, 596 F.3d at 138. After "reiterat[ing]" that state indemnification claims are preempted by CERCLA, id. at 139 (citing Bedford, 156 F.3d at 427), the Niagara Mohawk court next held that CERCLA also preempts state unjust enrichment claims because "allowing [such claims] for CERCLA expenses would again circumvent the settlement scheme, as PRPs could seek

recompense for a legally unjustified benefit outside the limitations and conditions of CERCLA." Id. at 139.

While Bedford and Niagara Mohawk were decided in the context of a § 113(f) claim, the district courts in Hickey's Carting and West Side considered whether state-law claims were preempted in the context of § 107(a) claim. Both courts decided that they were not. In Hickey's Carting, the State of New York brought suit under § 107(a) seeking to recover CERCLA cleanup costs from the PRP defendants. 380 F. Supp. 2d at 110-11. New York also brought concurrent state-law claims for restitution, subrogation, and implied indemnity, which the defendants in turn sought to dismiss as preempted. Id. at 110-11. In holding that New York's state-law claims were not preempted by § 107(a), the Hickey's Carting court made several conclusions. First, as a predicate to all other analysis, it concluded that Bedford's apparently broad holding was limited to § 113(f) claims. Id. at 112-13. This conclusion was based, first, on the context of the Bedford court's preemption discussion, id. (citing Pfohl Bros. Landfill Site Steering Comm. v. Allied Waste Sys., 255 F. Supp. 2d 134, 152-53 (W.D.N.Y. 2003)), and, second, on the observation that "the actual conflict which supported the finding of preemption in Bedford" was not present in Hickey's Carting:

> What concerned the Second Circuit in Bedford was the possibility that [PRPs] would choose not to settle their claims with the government out of fear that other defendants could thwart section 113's contribution protection by bringing identical contribution claims under the state common law. It is difficult to see how such a scenario would play out in the context of a cost recovery action by the State under section 107, where there can be no similar fear that, once the government has reached a settlement with a [PRP], it will then turn around and bring common law claims against the exact same party, as such settlements are intended to resolve a [PRP's] liability to the government and generally contain releases and covenants not to sue for costs arising out of the same hazardous waste cleanup.

Id. at 113 (internal citations and footnotes omitted). The Hickey's Carting court went on to hold

17

that "[i]n the absence of any true danger that allowing the State to bring its common law claims . . . alongside its [§ 107(a)] action will undermine the settlement incentives set forth in section 113, Bedford's holding does not apply" and there is no conflict preemption on that basis.  Id. at 114.

Second, the Hickey's Carting court concluded that § 114(b)'s double-recovery bar did not require a finding of preemption, stating that it was "premature" to dismiss the state-law claims as preempted because there had not yet been double recovery and "the potential that [New York] may not be able to recover all of its costs from each cause of action" still remained.  Id. at 115.

Finally, the Hickey's Carting court concluded that allowing New York to recover on its state-law claims if its § 107(a) claim failed, because it did not meet CERCLA's statute of limitations or NCP requirements, would not "undermine[ ] and conflict[ ] with CERCLA's purposes."  Id. at 116.  The district court observed that finding preemption based on a failure to meet CERCLA's NCP requirements would be "akin" to a finding of field preemption because "common law remedies will never include a requirement that the costs sought were incurred consistent with the NCP."  Id. The district court held that in situations where a state brings state-law claims concurrently with a § 107(a) claim, the concern identified in Bedford that a PRP would "use the common law to outmaneuver the federal scheme set in place by Congress" was not implicated: "There can be no such concern here, as it is the government, not a private [PRP], who is seeking to recover the full extent of its response costs under the various remedies open to it."  Id. at 117.  The court buttressed its holding by noting CERCLA's "overriding" goals of "hold[ing] polluters responsible for their actions by forcing them to clean up hazardous waste sites and to reimburse the government for such cleanup when it has been done for them," id. (citing United States v. Witco Corp., 865 F. Supp. 245,

247 (E.D. Pa. 1994); Columbia River Serv. Corp. v. Gilman, 751 F. Supp. 148, 1452-53 (W.D. Wash. 1990)), which the district court found "tip[ped] the balance toward[ ] finding that there is no actual conflict between the state common law and CERCLA's NCP requirements." Id. The district court then held that "CERCLA's statutory language, legislative history, and interpreting case law all indicate that Congress did not intend for CERCLA to preempt state common law statutes of limitations." Id. at 118.

In the more recent case of West Side, in which the State of New York brought a § 107(a) claim concurrently with state-law claims for restitution, indemnification, and public nuisance, the district court held that "conflict preemption does not apply when there is no contribution action under CERCLA § 113." West Side, 790 F. Supp. 2d at 23-24. In so holding, the district court conducted a similar analysis to that of the district court in Hickey's Carting. First, the West Side court found that CERCLA's "two underlying purposes . . . [of] ensur[ing] rapid cleanup of contamination and . . . encourag[ing] . . . private parties to settle their liability with the government" supported its holding because "public entities" with multiple avenues of cost-recovery would have greater incentives to clean up contamination and PRPs would, " in turn, be incentivized to settle their obligations with the government entity in order to be afforded the CERCLA § 113 protections against other [PRPs] who may eventually seek contribution from them." Id. at 24. Second, the district court refused to dismiss the state-law claims under § 114(b)'s double-recovery bar, concluding that "[g]iven the broad range of possibilities . . . it would seem imprudent to dismiss state law claims outright on Rule 12 because of a mere *potential* for double recovery." Id. at 26 (citing Hickey's Carting, 380 F. Supp. 2d at 115) (emphasis in original). Third, the district court rejected the argument that allowing the state-law claims to proceed "would circumvent the

19

CERCLA goal of NCP compliance," finding that "[i]n enacting CERCLA, Congress clearly preserved the authority of states to impose additional liability regarding the release of hazardous substances" and, further, that "the imposition of additional hazardous waste contamination liability under state law, on facts that would not, for whatever reason, support CERCLA liability, is expressly authorized by CERCLA." Id. at 26-27 (citing § 114(a), 42 U.S.C. § 9614(a)).

Plaintiff argues that West Side provides clear support for its argument that § 107(a) does not preempt concurrent state-law claims. Resp. at 4. Defendant, however, argues that West Side is distinguishable from the present case on the ground that the plaintiff in West Side was a state, not a private PRP. Reply at 4-5. The Court finds that Plaintiff's status as a private PRP distinguishes this case from West Side, as well as from Hickey's Carting.[17] Indeed, the plaintiff in both West Side and Hickey's Carting was the State of New York, and West Side relied entirely on other cases with state plaintiffs to support its broad holding that "conflict preemption does not apply when there is no contribution action under CERCLA § 113." West Side, 790 F. Supp. 2d at 23 (citing Hickey's Carting, 380 F. Supp. 2d at 113-14; New York v. Next Millenium Realty, LLC, No. 03-CV-5985, 2008 WL 1958002, at *9-10 (E.D.N.Y. May 2, 2008); New York v. Ametek, Inc., 473 F. Supp. 2d 432, 433-35 (S.D.N.Y. 2007); New York v. Next Millenium Realty, LLC, No. 03-CV-5985, 2007

---

[17] Plaintiff argues that "there is no merit to [this] distinction" because the "question in every case is whether the actual conflict described in Bedford exists—that is, whether the settlement incentives of CERCLA Section 113(f)(2) are disturbed by allowing parties to bring state law claims," and that conflict only arises, according to Plaintiff, "where claims are brought after a party has settled with a government entity and received protection from future contribution claims." Resp. at 8 n.6. Plaintiff ignores, however, the other bases for conflict preemption identified by the district courts in West Side and Hickey's Carting that do not turn on whether CERCLA's settlement scheme is disturbed. Those cases clearly considered the status of the plaintiff as either a governmental entity or a private PRP to be a factor in determining preemption under one or more of the alternative bases. The Court similarly concludes that the public or private nature of a plaintiff is significant to this determination.

WL 2362144, at *8-11 (E.D.N.Y. Aug. 14, 2007)).  Furthermore, Hickey's Carting expressly

contrasted its state plaintiff with a private plaintiff and otherwise used language that indicated that

such a distinction mattered in its analysis.  380 F. Supp. 2d at 113, 117.  West Side, in turn,

qualified its broad holding by expressly basing it, in significant part, on the analysis in Hickey's

Carting.  West Side, 790 F. Supp. 2d at 23-24 (quoting Hickey's Carting, 380 F. Supp. 2d at 113).

The instant case puts the following unanswered question[18] squarely before the Court: Where

a *private PRP* brings an action against another PRP under CERCLA § 107(a), are concurrent state-

law claims preempted?

While West Side and Hickey's Carting are not directly on point, the analytical framework

employed by the district courts in those cases provides a useful guide for the Court's own analysis in

answering this question.  Under that framework, the Court must decide: (1) whether allowing

Plaintiff's state-law claims to proceed would conflict with CERCLA's settlement scheme; (2)

whether allowing Plaintiff to recover on those claims if its § 107(a) claim were to fail would conflict

with CERCLA's NCP requirement; and (3) whether the double-recovery bar in CERCLA § 114(b)

preempts Plaintiff's state-law claims.[19]  The Court ultimately answers each question in the negative.

---

[18] The Court notes that another court in this District recently considered § 107(a)'s preemptive effect in the context of a § 107(a) claim brought by a private PRP concurrently with state-law claims for negligence, public and private nuisance, and trespass.  See Fitzgibbons, 2011 WL 6218208, at *14.  Although that court found no preemption, it did so solely on the basis that it was too early in the litigation to determine whether double recovery would result.  Id.  The Fitzgibbons court was not faced with the same argument that Defendant makes here (*i.e.*, that the status of the party bringing the claims as either a state or a private PRP dictates different results under the preemption analysis) and therefore did not address it.

[19] The Court considers the following issues resolved by Hickey's Carting: (1) whether Bedford applies broadly to all CERCLA claims (it does not); and (2) whether state-law statutes of limitations conflict with CERCLA's statute of limitations (they do not).  The Court also finds that Niagara Mohawk's seemingly broad preemption holding is limited to § 113(f) claims by the context

a.  Conflict with CERCLA's Settlement Scheme

A PRP bringing a claim under CERCLA § 107(a) will not have incurred CERCLA liability, either through judgment or settlement, to a third party.  In this context, the third party will typically be either the federal or a state government.  Instead, the PRP will be seeking to recover CERCLA cleanup costs that it incurred voluntarily from another PRP who has or has not already settled its own CERCLA liability with the government.

In this situation, where the suing PRP has not incurred liability to a third party, concerns about CERCLA preempting state-law indemnification and contribution claims are generally illusory because such claims universally require a plaintiff to make a compulsory payment before they become ripe.  See 18 AM. JUR. 2D *Contribution* § 9 ("The primary requisites of the equitable right to contribution . . . are: . . . (2) compulsory payment or other discharge by the party seeking contribution of more than his or her fair share of the common obligation or burden."); 41 AM. JUR. 2D *Indemnity* § 26 ("Generally, a cause of action for implied indemnity does not come into existence until the indemnitee has suffered actual loss through the payment of a judgment or settlement."). Because a § 107(a) plaintiff will necessarily have incurred CERCLA costs voluntarily rather than compulsorily, it will have no basis for maintaining an indemnification or contribution claim in the same action for the *same costs*.[20]

Notwithstanding this practical reality, a private PRP's state-law claims brought concurrently with its CERCLA § 107(a) claim are not preempted as conflicting with § 113(f)'s settlement

―――――――――――――――

of the discussion in which it was rendered.  See 596 F.3d at 138-39.

[20] Indeed, this is the very situation that the Court is faced with here, and the Court accordingly dismisses Plaintiff's state-law indemnification and contribution claims in Part IV.B of this Memorandum-Decision and Order.

scheme.  In Atlantic Research, the Supreme Court held that the settlement scheme was not

undermined by allowing a PRP to bring a § 107(a) claim against another PRP:

> [P]ermitting PRPs to seek recovery under § 107(a) will not eviscerate the settlement bar
> set forth in § 113(f)(2).  That provision prohibits § 113(f) contribution claims against
> "[a] person who has resolved its liability to the United States or a State in an
> administrative or judicially approved settlement . . . ."  The settlement bar does not by
> its terms protect against cost-recovery liability under § 107(a).  For several reasons, we
> doubt this supposed loophole would discourage settlement.  First, as stated above, a
> defendant PRP may trigger equitable apportionment by filing a § 113(f) counterclaim.
> A district court applying traditional rules of equity would undoubtedly consider any
> prior settlement as part of the liability calculus.  Second, the settlement bar continues
> to provide significant protection from contribution suits by PRPs that have inequitably
> reimbursed the costs incurred by another party.  Third, settlement carries the inherent
> benefit of finally resolving liability as to the United States or a State.

551 U.S. at 140-41 (citations omitted).  This reasoning extends easily to a private PRP's concurrent

§ 107(a) and state-law claims: A PRP that finds itself subject to such a combination of claims can,

as Atlantic Research suggests, bring a counterclaim under § 113(f) for equitable apportionment of

the CERCLA cleanup costs.  If the PRP being sued were to settle its CERCLA liability with the

federal or a state government, the district court overseeing the case would factor that settlement into

its liability calculations.  After determining the amount of the settling PRP's CERCLA liability to

the suing PRP, the district court would then undoubtedly prohibit the suing PRP from recovering the

*same costs* under its state-law claims based on CERCLA § 114(b).[21]  Furthermore, by settling, the

---

[21] Defendant asserts that N.Y. State Electric & Gas Corp. v. FirstEnergy Corp., No. 03-CV-
0438, 2007 WL 1434901, at *11 (N.D.N.Y. May 11, 2007) [hereinafter FirstEnergy I], stands for the
proposition that § 107(a) has the same preclusive effect as § 113 because a private PRP "may seek
cost recovery from other PRPs, subject to the right for the PRP to counterclaim under section 113(f)
for contribution."  Reply at 4.  In FirstEnergy I, the only claim before the court was a state-law
contribution claim, as all other claims, including one under CERCLA § 113(f), had been dismissed
previously.  The Second Circuit, however, later permitted the plaintiff to amend its complaint to add
a § 107(a) claim.  N.Y. State Elec. & Gas Corp. v. FirstEnergy Corp., 328 F. App'x 13 (2d Cir.
2009) [hereinafter FirstEnergy II].  First, the confused procedural posture of FirstEnergy I makes it
difficult for the Court to determine whether it is applicable to the facts of this case.  Second,

PRP being sued gains the other benefits identified in <u>Atlantic Research</u>.  Thus, a PRP has just as much incentive to settle its CERLCA liability with the government when faced with simultaneous § 107(a) and state-law claims as when faced with a § 107(a) claim alone.  Therefore, a private PRP's state-law claims brought alongside its § 107(a) claim do not conflict with CERCLA's settlement scheme.

This conclusion is consistent with the Second Circuit's case law on CERCLA preemption.  As discussed at length above, in both <u>Bedford</u> and <u>Niagara Mohawk</u> the Second Circuit expressed concern that a PRP would circumvent § 113(f)'s settlement scheme by bringing state-law claims against other PRPs.  This concern is realized, however, only when the state-law claims seek and would ultimately recover *CERCLA response costs*.  On that point <u>Niagara Mohawk</u> is clear.  There, the Second Circuit first observed that "§ 113 was intended to provide the only contribution avenue for parties with *response costs incurred under CERCLA*" before going on to hold that "state law contribution claims *for CERCLA response costs* conflict with CERCLA contribution claims and therefore are preempted."  596 F.3d at 138 (emphasis added).  Thus, state-law claims brought concurrently with a § 107(a) claim "seek recompense for a legally unjustified benefit outside the limitations and conditions of CERCLA," <u>id.</u> at 139, only when they seek to recover costs already available under CERCLA.  This interpretation is further supported by the Second Circuit's statement that when a PRP "*did not* incur costs outside of CERCLA, [it] has no grounds for contribution under New York law." <u>Id.</u> at 138 (emphasis added).  That there *are* grounds for state-

---

<u>FirstEnergy I</u> appears to be limited to § 113(f) claims because the court in that case observed that "courts have permitted plaintiffs seeking cost recovery under § 107 of CERCLA to invoke a variety of state common law claims to recover damages not potentially awardable under CERCLA." <u>Id.</u> at *10.  Third, to the extent that <u>FirstEnergy I</u> finds that a PRP's ability to counterclaim under § 113(f) creates, rather than obviates or at least mitigates, a conflict-preemption issue, the Court disagrees.

law contribution when the PRP *has* incurred costs outside of CERCLA is clearly implied by that statement.

Furthermore, Hickey's Carting supports the conclusion that a private PRP's state-law claims brought alongside its § 107(a) claim do not conflict with CERCLA's settlement scheme. There, the district court held that Bedford did not apply "[i]n the absence of any true danger that allowing the State to bring its common law claims . . . alongside its [§ 107(a)] action will undermine the settlement incentive set forth in section 113." Hickey's Carting, 380 F. Supp. 2d at 114. This holding extends to private PRP plaintiffs because, as the Court has illustrated above, there is little real danger that § 113(f)'s settlement incentives will be undermined if a private PRP is permitted to bring state-law claims alongside its § 107(a) claim.

Accordingly, CERCLA § 113(f)'s settlement scheme does not preempt Plaintiff's state-law claims in Counts VI through VIII.

### b. Conflict with CERCLA's NCP Requirements

Both West Side and Hickey's Carting recognized that state law could conflict with CERCLA not only through CERCLA's settlement scheme but also through its NCP requirements. Under § 107(a), PRPs are liable only for cleanup costs that are incurred consistent with the NCP. If the party seeking cleanup costs failed to adhere to the NCP, CERCLA denies recovery. The argument for conflict preemption, then, is: If a CERCLA plaintiff could recover cleanup costs on state-law grounds (which are potentially easier to satisfy) where its concurrent § 107(a) claim fails, future plaintiffs may see that as incentive not to comply with the NCP, thereby undermining CERCLA's goal of NCP compliance.

In Hickey's Carting, the district court rejected this argument but did so partly on the basis

25

that "[t]here could be no such concern here, as it is the government, not a private responsible party, who is seeking to recover the full extent of its response costs under the various remedies open to it." 380 F. Supp. 2d at 118.  By this statement, the district court drew a clear distinction between a government plaintiff and a private PRP plaintiff.  The Court, however, cannot discern a basis for that distinction.  There is no reason why a state should be more inclined to comply with the NCP when it can, in the absence of a valid § 107(a) claim, recover "the full extent of its cleanup costs" under various state laws than a private PRP would be under the same circumstances.  When either a state or a private PRP decides to clean up a site contaminated by hazardous waste voluntarily, its primary incentive to adhere to the NCP is the same: the ability to recover NCP-compliant costs from a PRP under "relaxed" causation principles.  See DVL, Inc. v. Gen. Electric Co., 811 F. Supp. 2d 579, 594 (N.D.N.Y. 2010) ("CERCLA thus "relaxes" but does not eliminate the causation requirement: a plaintiff need not show a causal link between that particular waste and the response costs the plaintiff incurred, but it must demonstrate that a defendant deposited hazardous waste at the site in question." (citing N.J. Tpk. Auth. v. PPG Indus., Inc., 16 F. Supp. 2d 460, 469 (D.N.J. 1998)).  Furthermore, before its own liability has accrued under § 107(a) or by settlement, neither a state nor a private PRP is concerned with seeking contribution through § 113(f) or benefitting from § 113(f)'s settlement protections simply because they cannot do either.  Thus, in terms of incentives to comply with the NCP, both a state and a private PRP are in the same position when voluntarily cleaning a contaminated site.

The other basis for Hickey's Carting's finding of no preemption is more convincing, and the Court finds that it applies to this case.  The district court in Hickey's Carting held that finding a conflict between state-law claims and CERCLA because the state-law claims did not satisfy the

26

requirements of the NCP "would be akin to field preemption by CERCLA of state common law claims" because "common law remedies will never include a requirement that the costs sought were incurred consistent with the NCP."  380 F. Supp. 2d at 116-17.  Field preemption under CERCLA is, of course, "inconsistent with CERCLA's savings clauses as well as the Second Circuit's holding in <u>Bedford</u>."  <u>Id.</u>  This conclusion does not depend on whether the plaintiff is a state or a private PRP, but rather is equally applicable in both cases.

The Court also finds that <u>West Side's</u> reasons for rejecting preemption of state law by way of CERCLA's NCP requirements are persuasive and apply to a private PRP.  There, the district court held that the plaintiff could maintain state-law claims even if its § 107(a) claim failed because CERCLA, in § 114(b), expressly authorized "[t]he imposition of additional hazardous waste contamination liability under state law, on facts that would not, for whatever reason, support CERCLA liability."  <u>West Side</u>, 790 F. Supp. 2d at 27.  Furthermore, responding to the defendants' argument that they could be subject to CERCLA liability even if the NCP were not complied with, the district court observed that, "[c]learly, there can be no recovery *under CERCLA* without NCP compliance."  <u>Id.</u> (emphasis in original).  Both of these findings support the conclusion that state-law claims are not preempted by CERCLA's NCP requirements whether accompanying § 107(a) claims brought by a state or by a private PRP.

Finally, permitting private PRPs and states alike to bring state-law claims alongside their § 107(a) claims accomplishes CERCLA's remedial purpose of "encourag[ing] prompt and effective cleanup of hazardous waste sites" by "assuring that those responsible for any damage, environmental harm, or injury from chemical poisons bear the costs of their actions."  <u>Niagara Mohawk</u>, 596 F.3d at 120.  An owner of contaminated property is more likely to respond to the

contamination promptly and voluntarily (thereby saving the government from undertaking cleanup or, alternatively, compelling the property owner to respond to the contamination) if it has multiple avenues to recover its full response costs.

Accordingly, CERCLA NCP requirements do not preempt Plaintiff's state-law claims in Counts VI through VIII.

<u>c.</u>  <u>The Double-Recovery Bar</u>

Ultimately, as much of the discussion *supra* makes clear, whether state-law claims are preempted by CERCLA boils down to whether double recovery of CERCLA response costs will occur.  However, like the district courts in <u>West Side</u> and <u>Hickey's Carting</u>, the Court concludes that it would be acting prematurely if it were to dismiss Plaintiff's state-law claims merely because it is *possible* for Plaintiff to recover the same costs, and only the same costs, under those claims as it could under CERCLA.  Because the circumstances under which double recovery would not result are numerous, dismissing the state-law claims at this stage would be "imprudent."[22]  <u>West Side</u>, 790 F. Supp. 2d at 26.

The Court's previous decision in <u>DVL, Inc.</u>, 811 F. Supp. 2d at 597, does not direct a different result.  Although in that case the Court found that a § 107(a) claim preempted the plaintiff's concurrent state-law indemnification claim, the Court did so at the summary judgment stage when it became evident that there would be double recovery.  <u>Id.</u>  Here, Defendant is certainly free to make a "renewed attack at a later, more informed and factually developed point in th[is]

---

[22] Furthermore, Plaintiff's state-law claims may proceed even though they are not pleaded in the alternative to Plaintiff's CERCLA claim.  The state-law claims and CERCLA are only mutually exclusive to the extent that the costs Plaintiff is entitled to recover under each are exactly the same. It is therefore possible for Plaintiff to recover simultaneously on both its CERCLA claim and its state-law claims in this action, albeit for different costs.

litigation," at which time it might be appropriate for the Court to dismiss Plaintiff's state-law claims.  West Side, 790 F. Supp. 2d at 26 (citing Next Millenium, 2007 WL 2362144, at *11 ("[D]efendants can reassert their motion at a later stage of the litigation when additional information would be available concerning what costs would be recoverable under each claim.")).

Accordingly, CERCLA § 114(a)'s double-recovery bar does not preempt Plaintiff's state-law claims in Counts VI through VIII at this early point in the litigation.  The Court therefore denies Defendant's Motion insofar as it seeks to dismiss Counts VI through VIII as preempted by CERCLA.  But, as the Court discusses *infra*, Count VIII is nonetheless dismissed because it is unripe.

### B.  State-Law Contribution and/or Indemnification Claims[23]

In Count VIII of its Complaint, Plaintiff asserts that it is "entitled to full indemnification from [Defendant] for the costs of responding to [Defendant's] releases of hazardous substances, including PCBs, at the Sistersville Site as well as any liability incurred as a result of damage claims asserted against MPM by reason of the actions or inactions of [Defendant]."  Compl. ¶ 64.  In the alternative, should full indemnification be unavailable, Plaintiff asserts that it is entitled to contribution from Defendant "for its full and fair share of the [same] costs."  Id. ¶ 65.

In its Response, Plaintiff advances arguments almost exclusively concerning its entitlement to a declaratory judgment.  See Resp. at 8-11.  These arguments, however, are completely irrelevant to Defendant's Motion to dismiss Count VIII.  First, Count VIII does not seek a declaratory judgment.  See Compl. ¶¶ 60-65.  Second, the cases that Plaintiff cites in support of its argument all

---

[23] The parties agree that for the purposes of this Motion, New York law governs Plaintiff's claims for contribution and indemnity.  See Mem. at 9 n.9; Resp. at 8 n.7.

address the availability of a declaratory judgment for future CERCLA costs, not for indemnification or contribution under the common law.  See Resp. at 9 (citing New York v. Solvent Chem. Co., 664 F.3d 22, 27 (2d Cir. 2011); Cadillac Fairview/Cal., Inc. v. Dow Chem. Co., 840 F.2d 691, 696 (9th Cir. 1988); Prisco v. New York, 902 F. Supp. 374, 392 (S.D.N.Y. 1995); Arawana Mills Co. v. United Tech. Corp., 795 F. Supp. 1238 (D. Conn. 1992)).  These cases are therefore inapposite.

As Defendant correctly asserts in its Memorandum of law and Reply, the real question here is whether Count VIII is ripe absent an allegation that Plaintiff has incurred liability to a third party as a result of Defendant's actions or inactions.  Mem. at 9-11.  "In general, a case is not ripe if it 'involves uncertain and contingent future events that may not occur as anticipated, or indeed may not occur at all.'"  Armored Grp., LLC v. Homeland Sec. Strategies, Inc., No. 07 CV 9694, 2009 WL 1110783, at *3 (S.D.N.Y. Apr. 21, 2009) (quoting AMSAT Cable Ltd. v. Cablevision of Connecticut Ltd. P'ship, 6 F.3d 867, 872 (2d Cir. 1993)).  "More specifically, 'New York law clearly provides that a claim for indemnification or contribution is premature where there has been neither entry of judgment nor payment.'"  Id. (citing IntelliSec v. Firecom, Inc., No. 00 Civ. 3557, 2001 WL 218940, at *12 (E.D.N.Y. Feb. 1, 2001); Plantronics, Inc. v. United States, No. 88 Civ. 1892, 1990 WL 3202 (S.D.N.Y. Jan. 9, 1990); Bay Ridge Air Rights, Inc. v. State, 394 N.Y.S.2d 464 (App. Div. 1977)).

While conceding that no judgment has been rendered against it, Plaintiff argues that it has made a "payment" entitling it to maintain its indemnification and contribution claims by paying for PCB soil sampling.  Resp. at 3 n.2, 10 n.9.  "Under New York law, a party who voluntarily makes a payment has 'no right to seek indemnification for a loss it was not obligated to pay in the first instance.'"  Underpinning & Found. Skanska, Inc. v. Travelers Cas. & Sur. Co. of Am., 726 F.

Supp. 2d 339, 352 (S.D.N.Y. 2010) (quoting <u>Reliance Ins. Co. v. State Farm Mut. Auto. Ins. Co.</u>, 664 N.Y.S.2d 958, 958 (App. Div. 1997)).  "The voluntary payment doctrine bars recovery of payments voluntarily made with full knowledge of the facts, and in the absence of fraud or mistake of material fact or law." <u>Id.</u> (quoting <u>Merchants Mut. Ins. Group v. Travelers Ins. Co.</u>, 806 N.Y.S.2d 813, 813 (App. Div. 2005)) (internal quotation marks omitted).  Because Plaintiff's payment for PCB soil testing was made voluntarily to cover costs it incurred by choice rather than by legal obligation to a third party, it is not a payment that can support Plaintiff's claims for indemnification and contribution.  <u>See</u> <u>Charter Oak Fire Ins. Co. v. Bolding</u>, No. 08-CV-2632, 2009 WL 3246116, at *4 (E.D.N.Y. Oct. 1, 2009) (noting that claims for indemnification "are not ripe for adjudication until liability has been imposed upon the party to be indemnified"); <u>Armored Grp.</u>, 2009 WL 1110783, at *3-4 (dismissing claims for indemnification and contribution because the plaintiff did not allege "either the entry of judgment or payment by [the plaintiff] to a third party"); <u>FirstEnergy I</u>, 2007 WL 1434901, at *7 ("[T]he party seeking contribution must have been compelled in some way, such as through the entry of a judgment, to make the payment against which contribution is sought.").

Accordingly, Count VIII of Plaintiff's Complaint is dismissed without prejudice as premature.

### C.  State-Law Private Nuisance Claim[24]

In Count IX of its Complaint, Plaintiff asserts that Defendant's use of the Sisterville Site has "interfered, and will continue to interfere, substantially and unreasonably with [Plaintiff's] private

---

[24] The parties agree that for the purposes of this Motion, West Virginia law governs Plaintiff's claim for private nuisance.  <u>See</u> Mem. at 12; Resp. at 11-12.

use of its property."  Compl. ¶ 67.  Accordingly, Plaintiff seeks damages under the common law of private nuisance.  Id. ¶ 71.

Defendant argues that Count IX should be dismissed because West Virginia does not recognize a claim for private nuisance where, as here, the nuisance originated on the same property that was allegedly impacted by it.  Mem. at 11-13; Reply at 8-10.  Plaintiff responds by citing the decision of the Supreme Court of Appeals of West Virginia in State ex rel. Smith v. Kermit Lumber & Pressure Treating Co., 488 S.E.2d 901, 924-25 (W. Va. 1997), which Plaintiff argues permits intergenerational nuisance claims.  Resp. at 11-12.  Defendant counters that Plaintiff mischaracterizes its argument, which Defendant claims does not turn on whether a nuisance "may continue even after a defendant's offensive conduct has ended" but whether "a private nuisance must originate from activities outside the impaired property."  Reply at 8.

The Court finds Kermit Lumber inapposite to Defendant's ground for seeking dismissal of Count IX.  First, Kermit Lumber incorporates the doctrine of continuing nuisance into West Virginia law, see 488 S.E.2d at 924-25 (quoting Arcade Water Dist. v. United States, 940 F.2d 1265 (9th Cir. 1991)), but, as Defendant correctly points out, this doctrine "helps to determine collateral issues such as the applicable limitations period and the availability of single or successive actions but is irrelevant to whether a nuisance claim has been stated in the first place," Reply at 8.  Second, Kermit Lumber involved a claim for public nuisance caused by the defendant's contamination of public waters through runoff from the polluted property.  See 488 S.E.2d at 925-26.  But "a private nuisance action is different from a public nuisance action."  Id. at 925 n.29.  Unlike a private nuisance, a public nuisance does not necessarily involve "interference with the private use and enjoyment of another's land."  Hendricks v. Stalnaker, 380 S.E.2d 198, 200 (W. Va. 1989).  Rather,

32

a public nuisance interferes with the rights of "the general public," typically by causing harm to "the public health and safety" or the environment.  Kermit Lumber, 488 S.E.2d at 921, 925 n.29 (internal quotation marks omitted).  Thus, because a public-nuisance plaintiff seeks to vindicate a public right that does not depend on "the exercise of private property rights," the mere "happenstance" that the nuisance originated on the plaintiff's land is insufficient to defeat the claim.  See Phila. Elec. Co. v. Hercules, Inc., 762 F.2d 303, 315 n.13 (3d Cir. 1985).  This is not true of a private nuisance claim. See id. at 314, 315 n.13.

"[A]t the heart of [private] nuisance is the notion that the lawful use of the estate has the effect of 'ousting' an *adjacent* landowner from his estate."  Hendricks, 380 S.E.2d at 201 n.4 (emphasis added).  Numerous other West Virginia private-nuisance cases focus on a neighboring or nearby property rather than on the harmed property itself.  See, e.g., Burch v. NedPower Mount Storm, LLC, 647 S.E.2d 879, 892 (W. Va. 2007) ("We hold, therefore, that an activity that diminishes the value of *nearby property* and also creates interferences to the use and enjoyment of the *nearby property* may be abated by a circuit court applying equitable principles." (emphasis added)); Booker v. Foose, 613 S.E.2d 94, 97 (W. Va. 2005) ("[N]uisance is the unreasonable, unusual, or unnatural use of one's property so that it substantially impairs the right of another to peacefully enjoy his or her property." (quoting 58 Am. Jur. 2d *Nuisances* § 2 (2002)) (collecting cases); Taylor v. Culloden Pub. Serv. Dist., 591 S.E.2d 197, 200 (W. Va. 2003 ("immediately adjacent to"); West v. Nat'l Mines Corp., 285 S.E.2d 670, 674 (W. Va. 1981) ("adjacent premises"). This reflects "the historical role of private nuisance law as a means of efficiently resolving conflicts between *neighboring*, *contemporaneous land uses*."  Hercules, 762 F.2d at 314 (emphasis added). Because Plaintiff does not identify any West Virginia law that contradicts this conclusion or at least

casts it into doubt, the Court finds that it operates to bar Plaintiff's claim for a private nuisance that

originated on its own property.

Accordingly, Count IX of Plaintiff's Complaint is dismissed with prejudice.

**V.      CONCLUSION**

Accordingly, it is hereby:

**ORDERED**, that Defendant's Motion (Dkt. No. 23) to dismiss for failure to state a claim

upon which relief can be granted is **GRANTED in part** and **DENIED in part** consistent with this

Memorandum-Decision and Order; and it is further

**ORDERED**, that Counts II and VIII of Plaintiff's Complaint (Dkt. No. 1) are **DISMISSED**

**without prejudice**; and it is further

**ORDERED**, that Count IX of Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED with**

**prejudice**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and

Order on the parties.

**IT IS SO ORDERED**.


DATED:        March 18, 2013
              Albany, New York


Lawrence E. Kahn
U.S. District Judge

34