**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MPM SILICONES, LLC,<br><br>Plaintiff,<br><br>v.<br><br>UNION CARBIDE CORPORATION,<br><br>Defendant. | No. 1:11-CV-1542 LEK/ATB |

**MPM SILICONES, LLC'S OBJECTIONS AND RESPONSES TO DEFENDANT UNION CARBIDE CORPORATION'S FIRST SET OF REQUESTS FOR ADMISSION TO PLAINTIFF MPM SILICONES, LLC**

Plaintiff MPM Silicones, LLC ("MPM") hereby responds and objects to Defendant Union Carbide Corporation's First Set of Requests for Admission to Plaintiff MPM Silicones, LLC as follows:

## GENERAL OBJECTIONS

1. MPM incorporates these General Objections into its response to each of the requests propounded by Union Carbide Corporation ("UCC") as though restated in full therein. General Objections may be referred to specifically in certain responses for the purpose of clarity. The failure to incorporate a General Objection specifically in MPM's response to any request should not be construed as a waiver of any objection.

2. MPM objects to any request, including any applicable definitions or instructions, to the extent that it seeks to impose obligations upon MPM greater than or inconsistent with those imposed by the Federal Rules of Civil Procedure and any applicable local rules or court orders. MPM reserves all objections and rights to which it is entitled under the Federal Rules of Civil Procedure.

3. MPM objects to any request, including any applicable definitions or instructions, to the extent that it is overly broad, unduly burdensome, oppressive, vague, ambiguous, unintelligible, unclear, or susceptible to varying interpretations. MPM responds to these requests in accordance with the ordinary and accepted usage of the English language, except as otherwise noted herein. MPM responds to each of the requests based upon its understanding of the specific request and reserves the right to assert additional objections or to amend or supplement its response.

4. MPM objects to any request, including any applicable definitions or instructions, to the extent that it purports to require MPM to provide information that is subject to the attorney-client privilege, the attorney work-product doctrine, or any other applicable privilege or protection from discovery. MPM asserts each and every applicable privilege and rule governing confidentiality to the fullest extent provided by law. MPM's responses are not intended to, nor should they be construed as, a waiver or relinquishment of any part of the protections afforded by the attorney-client privilege, the attorney work-product doctrine, or any other applicable privilege or immunity.

5. MPM objects to any request, including any applicable definitions or instructions, to the extent it seeks information not within MPM's possession, custody, or control.

6. MPM objects to any request, including any applicable definitions or instructions, to the extent it assumes or implies facts or circumstances that do not or did not exist.

7. MPM is continuing its investigation of this matter, and its responses to these interrogatories are based on the information known by MPM at the present time based on its diligent investigation to date. MPM reserves the right to amend or supplement its responses, including its objections. These responses are made without prejudice to MPM's right to refer to, produce, or introduce at the time of motion or trial any and all evidence, witnesses, facts,

contentions, information, or documents developed through the course of discovery, investigation, or trial preparation.

8. MPM objects to any request, including any applicable definitions or instructions, to the extent that it seeks information relating to releases or threatened releases of any substance other than PCBs or environmental contamination caused by any substance other than PCBs, which is not the subject of the relief MPM seeks in this action.

9. MPM objects to any request, including any applicable definitions or instructions, that is irrelevant to the subject matter of this action or not reasonably calculated to lead to the discovery of admissible evidence.

10. MPM objects to any request, including any applicable definitions or instructions, to the extent that it is unlimited in time or otherwise not limited to a relevant time period with respect to the matters at issue in this action.

11. MPM objects to any request, including any applicable definitions or instructions, to the extent that it seeks legal theories, opinions, or conclusions.

12. All information in MPM's responses to these interrogatories is provided solely for the purposes of this action.

13. MPM objects to the definition of "MPM" because it is overbroad and unduly burdensome.

14. MPM objects to the definition of "Surrounding" as vague and ambiguous.

15. MPM objects to the incorporation of the meaning of terms defined in CERCLA or RCRA or regulations promulgated under those acts as described in paragraph 25 of the "Definitions" of UCC's requests. Such an incorporation of unspecified defined terms is unduly burdensome, fails to give MPM fair notice of the meaning of terms in the requests, and unfairly

presumes to impose an unreasonable obligation to cross-reference the requests with unspecified external sources.

## SPECIFIC OBJECTIONS AND RESPONSES TO REQUESTS

**Request No. 1**

Admit the authenticity of all documents produced by MPM in this litigation.

**Response to Request No. 1**

MPM objects to this request on the ground that "authenticity" is vague, ambiguous, undefined, and subject to multiple meanings. MPM further objects to this request on the ground that it is overbroad and unduly burdensome, particularly given that MPM has produced tens of thousands of pages of documents in this case. Subject to and without waiver of its objections, MPM states that it will enter into an appropriate stipulation with respect to the authenticity of proposed trial experts in accordance with any pretrial order from the Court.

**Request No. 2**

Admit that MPM is the current "owner" and "operator" of the Site, as those terms are defined in 42U.S.C. § 9601(20)(A).

**Response to Request No. 2**

MPM objects to this request to the extent that it seeks a legal opinion or conclusion. Subject to and without waiver of its objections, MPM admits that it currently owns and operates the Site.

**Request No. 3**

Admit that MPM has not identified any release at the Site of any hazardous substance (other than PCBs) for which it seeks relief in this action.

**Response to Request No. 3**

MPM objects to this request on the ground that "identified" is ambiguous and subject to multiple meanings. Subject to and without waiver of its objections, MPM denies this request.

**Request No. 4**

Admit that MPM has not identified any threatened release at the Site of any hazardous substance (other than PCBs) for which it seeks relief in this action.

**Response to Request No. 4**

MPM objects to this request on the ground that "identified" is ambiguous and subject to multiple meanings. Subject to and without waiver of its objections, MPM denies this request.

**Request No. 5**

Admit that MPM does not have any evidence of a release of any hazardous substance from Landfill No. 2.

**Response to Request No. 5**

MPM objects to this request on the grounds that it seeks information irrelevant to this action and beyond the scope of Fed. R. Civ. P. 26(b)(1). Subject to and without waiver of its objections, MPM states that it is not seeking relief arising from any current release or threatened release of hazardous substances from Landfill No. 2. To the extent that a further response is necessary, MPM states that it has made reasonable inquiry, and the information it knows or can readily obtain is insufficient to enable it to admit or deny this request.

**Request No. 6**

Admit that MPM does not have any evidence of a threatened release of any hazardous substance from Landfill No. 2

**Response to Request No. 6**

Subject to and without waiver of its objections, MPM incorporates its response to Request No. 5.

**Request No. 7**

Admit that MPM has not incurred any response costs with respect to Landfill No. 2.

**Response to Request No. 7**

MPM objects to this request on the grounds that it seeks information irrelevant to this action and beyond the scope of Fed. R. Civ. P. 26(b)(1). MPM further objects to this request on the ground that "response costs" is ambiguous. MPM further objects to this request on the ground that the meaning of "with respect to Landfill No. 2" is vague and unclear. Subject to and without waiver of its objections, MPM admits that it does not seek to recover any currently incurred response costs incurred in connection with a release or threatened release from Landfill No. 2 in this action.

**Request No. 8**

Admit that with respect to the relief sought by MPM in this litigation, MPM has incurred no more than $374,540.25 in response costs.

**Response to Request No. 8**

MPM objects to this request to the extent that it implies or assumes that the relief sought by MPM in this litigation is limited to the response costs it has incurred or to $374,540.25.

MPM further objects to this request on the ground that "response costs" is ambiguous. Subject to and without waiver of its objections, MPM denies this request except that it admits that it seeks relief in this litigation that includes previously incurred response costs and that the response costs which it has incurred to date total $374,540.25.

**Request No. 9**

Admit that with respect to the relief sought by MPM in this litigation, MPM has not incurred any costs, other than the $374,540.25 in claimed response costs, that have not been reimbursed by other persons or third parties.

**Response to Request No. 9**

MPM objects to this request on the ground that it is unclear and unintelligible. MPM further objects to this request to the extent that it implies or assumes that the relief sought by MPM in this litigation is limited to the response costs it has incurred or to $374,540.25. MPM further objects to this request on the ground that "response costs" is ambiguous. MPM further objects to this request to the extent that it requests information regarding costs that MPM does not seek to recover in this litigation. Subject to and without waiver of its objections, MPM denies this request except that it admits that it seeks relief in this litigation that includes but is not limited to previously incurred response costs, that the response costs which it has incurred to date and which it seeks to recover from UCC currently totals $374,540.25, and that the response costs which it seeks to recover from UCC have not been reimbursed by other persons or third parties.

**Request No. 10**

Admit that MPM discovered PCBs in the area of the WWTU in June 2008.

**Response to Request No. 10**

MPM objects to this request on the ground that "in the area of the WWTU" is vague and ambiguous. Subject to and without waiver of its objections, MPM admits that it discovered PCBs in the vicinity of the WWTU in June of 2008.

**Request No. 11**

Admit that MPM did not report the existence of PCBs in any soils in the area of the WWTU to the West Virginia Department of Environmental Protection ("DEP") until March 16, 2012.

**Response to Request No. 11**

MPM objects to this request on the ground that "in the area of the WWTU" is vague and ambiguous. MPM further objects to this request on the ground that "report" is vague and ambiguous. MPM further objects to this request on the grounds that it is unclear and ambiguous with respect to actions taken by other persons on MPM's behalf. Subject to and without waiver of its objections, MPM states that it has made reasonable inquiry, and the information it knows or can readily obtain is insufficient to enable it to admit or deny this request.

**Request No. 12**

Admit that MPM did not report the existence of PCBs in any soils in the area of the WWTU to the United States Environmental Protection Agency ("EPA") until 2012.

**Response to Request No. 12**

MPM objects to this request on the ground that "in the area of the WWTU" is vague and ambiguous. MPM further objects to this request on the ground that "report" is vague and ambiguous. MPM further objects to this request on the grounds that it is unclear and ambiguous

with respect to actions taken by other persons on MPM's behalf. Subject to and without waiver of its objections, MPM denies this request.

**Request No. 13**

Admit that MPM did not report to any governmental agency or department its discovery of PCB contamination in any soils surrounding the WWTU until March 16, 2012.

**Response to Request No. 13**

MPM objects to this request on the ground that "surrounding the WWTU" is vague and ambiguous. MPM further objects to this request on the ground that "report" is vague and ambiguous. MPM further objects to this request on the grounds that it is unclear and ambiguous with respect to actions taken by other persons on MPM's behalf. Subject to and without waiver of its objections, MPM denies this request.

**Request No. 14**

Admit that MPM has not incurred any response costs associated with PCBs at the Site after October 2009.

**Response to Request No. 14**

MPM objects to this request on the ground that "response costs" is ambiguous. MPM further objects to this request on the ground that "incurred" is ambiguous. MPM further objects to this request on the grounds that it has previously provided UCC with invoices or other documentation demonstrating the incurrence of the response costs which MPM seeks to recover from UCC in this action. MPM further objects to this request to the extent that it requests information regarding costs that MPM does not seek to recover in this litigation. Subject to and without waiver of its objections, MPM denies this request.

**Request No. 15**

Admit that MPM has not conducted any assessment to determine the potential threat to human health or the environment posed by the PCBs found in the soils in the area of WWTU.

**Response to Request No. 15**

MPM objects to this request on the ground that "assessment to determine the potential threat to human health or the environment" is vague and ambiguous. MPM further objects to this request on the ground that "PCBs found in the soils in the area of WWTU" is ambiguous. MPM further objects to this request on the grounds that it is unclear and ambiguous with respect to actions taken by other persons on MPM's behalf. Subject to and without waiver of its objections, MPM denies this request.

**Request No. 16**

Admit that MPM has not conducted any assessment, other than consideration of precautions with respect to worker safety, to determine the potential threat to human health or the environment posed by the PCBs found in the soils in the area of the WWTU.

**Response to Request No. 16**

MPM objects to this request on the ground that "assessment to determine the potential threat to human health or the environment" is vague and ambiguous. MPM further objects to this request on the ground that "PCBs found in the soils in the area of WWTU" is ambiguous. MPM further objects to this request on the grounds that it is unclear and ambiguous with respect to actions taken by other persons on MPM's behalf. Subject to and without waiver of its objections, MPM denies this request.

**Request No. 17**

Admit that MPM has not prepared a final site-specific occupational safety and health program for the protection of workers at the Site pursuant to 40 C.F.R. 300.150.

**Response to Request No. 17**

MPM objects to this request on the ground that it is not limited to a relevant time period. MPM further objects on the ground that this request is overbroad and unduly burdensome. MPM further objects to this request on the grounds that it is unclear and ambiguous with respect to actions taken by other persons on MPM's behalf. MPM further objects to the extent that this request assumes the applicability of 40 C.F.R. 300.150 or any part thereof to actions taken by MPM. MPM further objects on the ground that "pursuant to 40 C.F.R. 300.150" is vague and ambiguous in the context of this request. MPM further objects to this request to the extent that it calls for a legal conclusion. Subject to and without waiver of MPM's objections, denied.

**Request No. 18**

Admit that MPM has not notified the DEP that PCBs were found in soils in the area of SB-67 at the Site.

**Response to Request No. 18**

MPM objects to this request on the ground that "in the area of SB-67" is vague and ambiguous. MPM further objects to this request on the grounds that it is unclear and ambiguous with respect to actions taken by other persons on MPM's behalf. Subject to and without waiver of its objections, denied.

**Request No. 19**

Admit that MPM has not notified the EPA that PCBs were found in soils in the area of SB-67 at the Site.

**Response to Request No. 19**

MPM objects to this request on the ground that "in the area of SB-67" is vague and ambiguous. MPM further objects to this request on the grounds that it is unclear and ambiguous with respect to actions taken by other persons on MPM's behalf. Subject to and without waiver of its objections, denied.

**Request No. 20**

Admit that MPM has not notified the DEP that PCBs were found in soils in the area of SB-71 at the Site.

**Response to Request No. 20**

MPM objects to this request on the ground that "in the area of SB-71" is vague and ambiguous. MPM further objects to this request on the grounds that it is unclear and ambiguous with respect to actions taken by other persons on MPM's behalf. Subject to and without waiver of MPM's objections, denied.

**Request No. 21**

Admit that MPM has not notified the EPA that the PCBs were found in soils in the area of the Site known as "SB-71."

**Response to Request No. 21**

MPM objects to this request to the extent that it assumes that there is an area of the Site known as SB-71. MPM further objects to this request on the ground that "in the area of the Site

known as SB-71" is vague and ambiguous. MPM further objects to this request on the grounds that it is unclear and ambiguous with respect to actions taken by other persons on MPM's behalf. Subject to and without waiver of MPM's objections, denied.

**Request No. 22**

Admit that MPM did not implement the proposed sampling plan to address PCB characterization activities in the former Waste Incineration Area that was approved by EPA Region 3 in October 2007 (*see* MPM0016303).

**Response to Request No. 22**

MPM objects to this request to the extent that it implies or assumes that the sampling plan addressed in the referenced document was proposed by MPM or that EPA or anyone else communicated the proposal or approval of that plan to MPM. MPM further objects to the extent that this request characterizes the sampling plan as limited to or defined by any geographical boundaries other than as described in the referenced document. Subject to and without waiver of MPM's objections, admitted.

**Request No. 23**

Admit that MPM has taken no response actions at the Waste Incineration Area relating to the presence of PCBs since October 2007.

**Response to Request No. 23**

MPM objects to this request on the ground that, as used in this request, "response actions" is unclear and ambiguous. MPM further objects to this request on the ground that "Waste Incineration Area" is vague and ambiguous. Subject to and without waiver of its objections, MPM states that it has made reasonable inquiry, and the information it knows or can

readily obtain is insufficient to enable it to admit or deny this request. Further responding, MPM states that the definition provided in UCC's requests for "Waste Incineration Area" is not sufficient to allow MPM to determine whether any of the response actions MPM took subsequent to encountering PCBs in connection with work on its wastewater treatment facility, as described in paragraph 15 of the complaint, occurred within the "Waste Incineration Area". MPM specifically denies this request to the extent that any such response actions were taken within the area referred to by UCC as the "Waste Incineration Area". MPM also specifically denies this request to the extent that it is interpreted to encompass actions taken in response to the presence of PCBs for which MPM is not seeking to recover past costs from UCC under CERCLA.

**Request No. 24**

Admit that MPM has taken no response actions at the Permitted Hazardous Waste Storage Area relating to the presence of PCBs since October 2007.

**Response to Request No. 24**

MPM objects to this request on the ground that, as used in this request, "response actions" is unclear and ambiguous. MPM further objects to this request on the ground that "Permitted Hazardous Waste Storage Area" is vague and ambiguous. Subject to and without waiver of its objections, MPM states that it has made reasonable inquiry, and the information it knows or can readily obtain is insufficient to enable it to admit or deny this request. Further responding, MPM states that the definition provided in UCC's requests for "Permitted Hazardous Waste Storage Area" is not sufficient to allow MPM to determine whether any of the response actions MPM took subsequent to encountering PCBs in connection with work on its wastewater treatment facility, as described in paragraph 15 of the complaint, occurred within the "Permitted Hazardous Waste Storage Area". MPM specifically denies this request to the extent

that any such response actions were taken within the area referred to by UCC as the "Permitted Hazardous Waste Storage Area". MPM also specifically denies this request to the extent that it is interpreted to encompass actions taken in response to the presence of PCBs for which MPM is not seeking to recover past costs from UCC under CERCLA.

**Request No. 25**

Admit that MPM knew of PCB contamination at the Site at the time it acquired the Site on or about July 31, 2003.

**Response to Request No. 25**

MPM objects to this request on the ground that "PCB contamination" is vague and ambiguous. MPM further objects to this request to the extent that it assumes or implies that MPM Silicones, LLC acquired the Site on or about July 31, 2003. Subject to and without waiver of its objections, MPM denies this request.

**Request No. 26**

Admit that MPM knew of PCBs in the soils in the Permitted Hazardous Waste Storage Area at the time it acquired the Site on or about July 31, 2003.

**Response to Request No. 26**

MPM objects to this request on the ground that "Permitted Hazardous Waste Storage Area" is vague and unclear. MPM further objects to this request to the extent that it assumes or implies that MPM Silicones, LLC acquired the Site on or about July 31, 2003. Subject to and without waiver of its objections, MPM denies this request.

**Request No. 27**

Admit that MPM knew of PCBs in the soils in the Waste Incineration Area at the time it acquired the Site on or about July 31, 2003.

**Response to Request No. 27**

MPM objects to this request on the ground that "Waste Incineration Area" is vague and unclear. MPM further objects to this request to the extent that it assumes or implies that MPM Silicones, LLC acquired the Site on or about July 31, 2003. Subject to and without waiver of its objections, MPM denies this request.

**Request No. 28**

Admit that MPM knew of PCBs in the groundwater in the EP Area at the time it acquired the Site on or about July 31, 2003.

**Response to Request No. 28**

MPM objects to this request on the ground that "EP Area" is vague and ambiguous. MPM further objects to this request to the extent that it assumes or implies that MPM Silicones, LLC acquired the Site on or about July 31, 2003. Subject to and without waiver of its objections, MPM denies this request. Subject to and without waiver of its objections, MPM denies this request.

**Request No. 29**

Admit that MPM knew of PCBs in the groundwater in the Fly Ash Disposal Area at the time it acquired the Site on or about July 31, 2003.

**Response to Request No. 29**

MPM objects to this request on the ground that "Fly Ash Disposal Area" is vague and unclear. MPM further objects to this request to the extent that it assumes or implies that MPM Silicones, LLC acquired the Site on or about July 31, 2003. Subject to and without waiver of its objections, MPM denies this request.

**Request No. 30**

Admit that MPM disposed of PCBs in Landfill No. 2.

**Response to Request No. 30**

Subject to and without waiver of its objections, admitted.

**Request No. 31**

Admit that MPM does not have any evidence that there has been a reduction in the value of the Site since MPM took ownership resulting from the discovery of PCB contamination at the Site.

**Response to Request No. 31**

MPM objects to this request on the grounds that it seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiver of MPMs objections, denied.

**Request No. 32**

Admit that MPM does not have any evidence that it has suffered any damages as the result of any interruption of its use of the Site caused by PCB contamination at the Site.

**Response to Request No. 32**

MPM objects to this request on the grounds that it seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiver of MPMs objections, denied.

**Request No. 33**

Admit that MPM does not have any evidence that it has suffered any damages as the result of any impairment of its use of the Site caused by PCB contamination at the Site.

**Response to Request No. 33**

MPM objects to this request on the grounds that it seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiver of MPMs objections, denied.

**Request No. 34**

Admit that Crompton Corporation ("Crompton") and General Electric Company entered into a Purchase and Exchange Agreement, dated April 24, 2003 ("2003 PEA").

**Response to Request No. 34**

Subject to and without waiver of MPM's objections, admitted.

**Request No. 35**

Admit that MPM knew at the time it took ownership of the Site on or about July 31, 2003, that the SWMUs at issue in this litigation existed on the Site.

**Response to Request No. 35**

MPM objects to this request to the extent that it assumes or implies that MPM Silicones, LLC acquired the Site on or about July 31, 2003. MPM further objects to this request on the ground that "SWMUs at issue in this litigation" is vague and ambiguous. MPM further objects to this request on the ground that UCC's failure to fully and properly identify and characterize SWMUs during its ownership of the Site renders it difficult or impossible to meaningfully assess whether SWMUs at issue in this case were known in 2003. Subject to and without waiver of its objections, MPM denies this request except that it admits that, at the time that MPM took ownership of the Site, MPM knew that at least some of the SWMUS at issue in this litigation existed on the Site.

**Request No. 36**

Admit that MPM knew at the time it took ownership of the Site on or about July 31, 2003, that corrective actions were ongoing with respect to the SWMUs at issue in this litigation.

**Response to Request No. 36**

MPM objects to this request to the extent that it assumes or implies that MPM Silicones, LLC acquired the Site on or about July 31, 2003. MPM further objects to this request on the ground that "SWMUs at issue in this litigation" is vague and ambiguous. MPM further objects to this request on the ground that UCC's failure to fully and properly identify and characterize SWMUs during its ownership of the Site renders it difficult or impossible to meaningfully assess whether SWMUs at issue in this case were known in 2003. Subject to and without waiver of its objections, MPM denies this request except that it admits that, at the time that MPM took ownership of the Site, MPM was aware that corrective actions were ongoing with respect to some of the SWMUs at the Site.

**Request No. 37**

Admit that MPM knew at the time it took ownership of the Site on or about July 31, 2003, that it would be required pursuant to RCRA to continue to undertake corrective action relating to the SWMUs at issue in this litigation.

**Response to Request No. 37**

MPM objects to this request to the extent that it assumes or implies that MPM Silicones, LLC acquired the Site on or about July 31, 2003. MPM further objects to this request on the ground that "SWMUs at issue in this litigation" is vague and ambiguous. MPM further objects to this request on the ground that UCC's failure to fully and properly identify and characterize SWMUs during its ownership of the Site renders it difficult or impossible to meaningfully assess whether SWMUs at issue in this case were known in 2003. Subject to and without waiver of its objections, MPM denies this request except that it admits that, at the time that MPM took ownership of the Site, it was known that corrective actions were ongoing with respect to some of the SWMUs at the Site.

**Request No. 38**

Admit that MPM knew at the time it took ownership of the Site on or about July 31, 2003, that Landfill No. 2 was in existence.

**Response to Request No. 38**

MPM objects to this request to the extent that it assumes or implies that MPM Silicones, LLC acquired the Site on or about July 31, 2003. Subject to and without waiver of MPMs objections, MPM admits that, at the time that MPM took ownership of the Site, MPM knew that Landfill No. 2 was in existence.

**Request No. 39**

Admit that MPM knew at the time it took ownership of the Site on or about July 31, 2003, that Landfill No. 2 was subject to RCRA closure and post-closure care requirements under 40 Code of Federal Regulations Part 264, Subparts G, H, and N.

**Response to Request No. 39**

MPM objects to this request to the extent that it assumes or implies that MPM Silicones, LLC acquired the Site on or about July 31, 2003. MPM further objects to the extent this request calls for a pure legal conclusion. Subject to and without waiver of its objections, MPM denies this request except that it admits that, at the time that MPM took ownership of the Site, MPM knew that Landfill No. 2 might be subject to closure and post-closure requirements.

**Request No. 40**

Admit that, prior to the closing date of the 2003 PEA, MPM received a copy of a Phase II Workplan prepared by ENVIRON (*see* MPM0015778-MPM0015787).

**Response to Request No. 40**

MPM objects to this request to the extent that it assumes or implies that MPM Silicones, LLC, as distinct from other entities, received a copy of the Phase II Workplan prior to the closing date of the PEA. Subject to and without waiver of its objections, MPM states that it has made reasonable inquiry, and the information it knows or can readily obtain is insufficient to enable it to admit or deny this request.

**Request No. 41**

Admit that, prior to the execution by GE and Crompton of the 2003 PEA, MPM received a copy of a draft Phase II Workplan prepared by ENVIRON (*see* MPM0015778-MPM0015787).

**Response to Request No. 41**

MPM objects to this request to the extent that it assumes or implies that MPM Silicones, LLC, as distinct from other entities, received a copy of the Phase II Workplan prior to the execution of the PEA. Subject to and without waiver of its objections, MPM states that it has made reasonable inquiry, and the information it knows or can readily obtain is insufficient to enable it to admit or deny this request.

**Request No. 42**

Admit that in May 2003, ENVIRON undertook sampling of the Phase II Investigation Areas (as defined in the ENVIRON Phase II Report (*see* MPM0015813-MPM0015814).

**Response to Request No. 42**

Subject to and without waiver of its objections, MPM states that it has made reasonable inquiry, and the information it knows or can readily obtain is insufficient to enable it to admit or deny this request.

**Request No. 43**

Admit that, prior to the closing date of the 2003 PEA, MPM received a copy of ENVIORN Phase II sampling results indicating the presence of PCBs in soil and groundwater at the Site.

**Response to Request No. 43**

MPM objects to this request to the extent that it assumes or implies that MPM Silicones, LLC, as distinct from other entities, received a copy of Environ Phase II sampling results prior to the closing date of the PEA. Subject to and without waiver of its objections, MPM states that it

has made reasonable inquiry, and the information it knows or can readily obtain is insufficient to enable it to admit or deny this request.

**Request No. 44**

Admit that, prior to the execution by GE and Crompton of the 2003 PEA, MPM received a copy of a draft Stage I Environmental Site Assessment, dated January 2003 and prepared by ENVIRON (*see* ENVIRON_004105-ENVIRON_004128).

**Response to Request No. 44**

MPM objects to this request to the extent that it assumes or implies that MPM Silicones, LLC, as distinct from other entities, received a copy of a Stage I Environmental Site Assessment prepared by Environ prior to the execution by GE and Crompton of the 2003 PEA. Subject to and without waiver of its objections, MPM states that it has made reasonable inquiry, and the information it knows or can readily obtain is insufficient to enable it to admit or deny this request.

**Request No. 45**

Admit that, prior to the execution by GE and Crompton of the 2003 PEA, MPM received a copy of a Phase I Environmental Site Assessment report prepared by Environmental Strategies Corporation ("ESC") dated December 4, 2002 (*see* GE_SIS 001215-GE_SIS 001287).

**Response to Request No. 45**

MPM objects to this request to the extent that it assumes or implies that MPM Silicones, LLC, as distinct from other entities, received a copy of a Phase I Environmental Site Assessment prepared by ESC prior to the execution by GE and Crompton of the 2003 PEA. Subject to and without waiver of its objections, MPM states that it has made reasonable inquiry, and the

information it knows or can readily obtain is insufficient to enable it to admit or deny this request.

**Request No. 46**

Admit that, prior to the execution by GE and Crompton of the 2003 PEA, MPM received a copy of a Phase Environmental Site Assessment prepared by ESC on or around January 17, 2003 (*see* GE_SIS 001215-GE_SIS 001287).

**Response to Request No. 46**

MPM objects to this request to the extent that it assumes or implies that MPM Silicones, LLC, as distinct from other entities, received a copy of a Phase I Environmental Site Assessment prepared by ESC prior to the execution by GE and Crompton of the 2003 PEA. Subject to and without waiver of its objections, MPM states that it has made reasonable inquiry, and the information it knows or can readily obtain is insufficient to enable it to admit or deny this request.

**Request No. 47**

Admit that, prior to the execution by GE and Crompton of the 2003 PEA, all of the documents set forth in the "References" section of the December 2002 ESC Phase I Environmental Site Assessment (*see* GE_SIS 001279-GE_SIS 001287) were made available to MPM.

**Response to Request No. 47**

MPM objects to this request to the extent that it assumes or implies that documents were made available to MPM Silicones, LLC, as distinct from other entities, prior to the execution by GE and Crompton of the 2003 PEA. MPM further objects on the ground that "made available"

is vague and ambiguous. Subject to and without waiver of its objections, MPM states that it has made reasonable inquiry, and the information it knows or can readily obtain is insufficient to enable it to admit or deny this request.

**Request No. 48**

Admit that MPM has claimed that it was required under RCRA and TSCA to report to the governmental agency the discovery of PCBs found in soils in the area of the WWTU.

**Response to Request No. 48**

Subject to and without waiver of its objections, MPM denies this request except that it admits that it has previously claimed that it had an obligation to notify regulators under RCRA and/or TSCA in connection with information it obtained about the presence of PCBs at the Site.

**Request No. 49**

Admit that Chemtura Corporation ("Chemtura") has reimbursed all past costs sought by MPM in this litigation related to the SWMUs at issue in this litigation.

**Response to Request No. 49**

MPM objects to this request on the grounds that "related" and "SWMUs at issue in this litigation" are both vague and ambiguous. Subject to and without waiver of MPMs objections, denied.

**Request No. 50**

Admit that Chemtura is contractually obligated to indemnify MPM for all future response costs associated with corrective actions taken regarding the SWMUs at issue in this litigation.

**Response to Request No. 50**

MPM objects to this request on the ground that it seeks a legal interpretation of a document equally available to UCC. MPM directs UCC's attention to the PEA. Subject to and without waiver of MPMs objections, denied.

**Request No. 51**

Admit that Chemtura is contractually obligated to indemnify MPM for response costs associated with PCB contamination that was present at the Site prior to closing of the 2003 PEA.

**Response to Request No. 51**

MPM objects to this request on the ground that it seeks a legal interpretation of a document equally available to UCC. MPM directs UCC's attention to the PEA. Subject to and without waiver of MPMs objections, denied except that MPM admits that Chemtura may be contractually committed to indemnify MPM for some response costs associated with PCB contamination at the Site provided that each of the various conditions to indemnification in that contract has been satisfied.

**Request No. 52**

Admit that Chemtura is contractually obligated to indemnify MPM for Chemtura's allocated share of the closure costs of Landfill No. 2, as set forth in Section 5 A.8 of the 2003 PEA.

**Response to Request No. 52**

MPM objects to this request on the ground that it seeks a legal interpretation of a document equally available to UCC. MPM directs UCC's attention to the PEA. Subject to and without waiver of its objections, MPM admits that Section 5A.8 sets forth contractual

commitments with respect to closure costs associated with Landfill No. 2. To the extent any further response is required, MPM denies this request.

**Request No. 53**

Admit that on August 4, 2003, a deed dated July 31, 2003 (the "2003 Deed") by which Crompton Corporation ("Crompton") conveyed to GE Silicones WV, L.L.C. ("GE Silicones WV") the real estate underlying the chemical manufacturing facility at issue in this action, together with the buildings and improvements thereon, was recorded by the Office of the Clerk of the County Commission of Tyler County, West Virginia (the "Tyler County Clerk") (*see* CHEM_003176).

**Response to Request No. 53**

Subject to and without waiver of its objections, MPM states that it has made reasonable inquiry, and the information it knows or can readily obtain is insufficient to enable it to admit or deny this request. Further responding, MPM states that if UCC were to represent that the referenced document was obtained from the Office of the Clerk of the County Commission of Tyler County under conditions supporting the conclusion that it was in fact recorded on August 4, 2003, MPM would not contest that conclusion.

**Request No. 54**

Admit that the 2003 Deed included an attachment Exhibit A (*see* CHEM_003181), which was also filed with the Tyler County Clerk on August 4, 2003.

**Response to Request No. 54**

Subject to and without waiver of its objections, MPM states that it has made reasonable inquiry, and the information it knows or can readily obtain is insufficient to enable it to admit or

deny this request. Further responding, MPM states that if UCC were to represent that the referenced document was obtained from the Office of the Clerk of the County Commission of Tyler County under conditions supporting the conclusion that it was in fact recorded on August 4, 2003, MPM would not contest that conclusion.

**Request No. 55**

Admit that MPM is not aware of any inaccuracies in the 2003 Deed and its attached Exhibit A.

**Response to Request No. 55**

MPM objects to this request on the ground that "inaccuracies" is vague and ambiguous. MPM further objects to this request to the extent it calls for an interpretation of the legal significance of a legal document. Subject to and without waiver of its objections, MPM states that it has made reasonable inquiry, and the information it knows or can readily obtain is insufficient to enable it to admit or deny this request.

**Request No. 56**

Admit that a disclosure instrument relating to the Site, dated September 25, 1986, was recorded by the Tyler County Clerk on September 26, 1986 (the "1986 Disclosure Instrument") (*see* MPM_INT_DISC_0035724).

**Response to Request No. 56**

Subject to and without waiver of its objections, MPM states that it has made reasonable inquiry, and the information it knows or can readily obtain is insufficient to enable it to admit or deny this request. Further responding, MPM states that if UCC were to represent that the referenced document was obtained from the Office of the Clerk of the County Commission of

Tyler County under conditions supporting the conclusion that it was in fact recorded on September 26, 1986, MPM would not contest that conclusion.

**Request No. 57**

Admit that the 1986 Disclosure Instrument is referenced in entry 49 of Exhibit A to the 2003 Deed.

**Response to Request No. 57**

Subject to and without waiver of its objections, MPM states that it has made reasonable inquiry, and the information it knows or can readily obtain is insufficient to enable it to admit or deny this request.

**Request No. 58**

Admit that the shaded area identified as "APPROX. LIMITS OF THE ENVIRONMENTAL PROTECTION WASTE WATER TREATMENT FAILCITY" in the map attached to the 1986 Disclosure Instrument encompasses the area of the Site known as the EP Area.

**Response to Request No. 58**

MPM objects to this request on the ground that "EP Area" is vague and ambiguous. MPM further objects to this request on the ground that "encompasses" is vague and ambiguous. Subject to and without waiver of its objections, MPM states that it has made reasonable inquiry, and the information it knows or can readily obtain is insufficient to enable it to admit or deny this request.

**Request No. 59**

Admit that the shaded area identified as "APPROX. LIMITS OF THE ENVIRONMENTAL PROTECITON WASTE WATER TREATMENT FACILITY" in the map attached to the 1986 Disclosure Instrument encompasses the entirety of the WWTU.

**Response to Request No. 59**

MPM objects to this request on the ground that WWTU is vague and ambiguous. MPM further objects to this request on the ground that "encompasses" is vague and ambiguous. Subject to and without waiver of its objections, MPM states that it has made reasonable inquiry, and the information it knows or can readily obtain is insufficient to enable it to admit or deny this request.

**Request No. 60**

Admit that the shaded are identified as "APPROX. LIMITS OF THE ENVIRONMENTAL PROTECTION WASTE WATER TREATMENT FACILITY" in the map attached to the 1986 Disclosure Instrument encompasses the entirety of the area where MPM claims to have discovered PCBs in connection with its efforts to upgrade the WWTU.

**Response to Request No. 60**

MPM objects to this request on the ground that WWTU is vague and ambiguous. MPM further objects to this request on the ground that "encompasses" is vague and ambiguous. Subject to and without waiver of its objections, MPM states that it has made reasonable inquiry, and the information it knows or can readily obtain is insufficient to enable it to admit or deny this request.

**Request No. 61**

Admit that, prior to the execution by GE and Crompton of the 2003 PEA, MPM reviewed the documents set forth in Exhibit A to the 2003 Deed.

**Response to Request No. 61**

MPM objects to this request to the extent that it assumes or implies that MPM Silicones, LLC, as distinct from other entities, reviewed the referenced documents prior to the execution by GE and Crompton of the 2003 PEA. Subject to and without waiver of its objections, MPM states that it has made reasonable inquiry, and the information it knows or can readily obtain is insufficient to enable it to admit or deny this request.

**Request No. 62**

Admit that, prior to the closing date of the 2003 PEA, MPM reviewed the documents set forth in Exhibit A to the 2003 Deed.

**Response to Request No. 62**

MPM objects to this request to the extent that it assumes or implies that MPM Silicones, LLC, as distinct from other entities, reviewed the referenced documents prior to the closing date of the 2003 PEA. Subject to and without waiver of its objections, MPM states that it has made reasonable inquiry, and the information it knows or can readily obtain is insufficient to enable it to admit or deny this request.

**Request No. 63**

Admit that a disclosure instrument, dated July 1, 1993, relating to the Site was recorded by the Tyler County Clerk on July 7, 1993 (the "1993 Disclosure Instrument") (*see* MPM_INT_DISC_0035709).

**Response to Request No. 63**

Subject to and without waiver of its objections, MPM states that it has made reasonable inquiry, and the information it knows or can readily obtain is insufficient to enable it to admit or deny this request. Further responding, MPM states that if UCC were to represent that the referenced document was obtained from the Office of the Clerk of the County Commission of Tyler County under conditions supporting the conclusion that it was in fact recorded on July 7, 1993, MPM would not contest that conclusion.

**Request No. 64**

Admit that the outlined area identified as "ENVIRONMENTAL PROTECTION FACILITIES" in the map attached to the 1993 Disclosure Instrument encompasses the EP Area.

**Response to Request No. 64**

MPM objects to this request on the ground that "EP Area" is vague and ambiguous. MPM further objects to this request on the ground that "encompasses" is vague and ambiguous. Subject to and without waiver of its objections, MPM states that it has made reasonable inquiry, and the information it knows or can readily obtain is insufficient to enable it to admit or deny this request.

**Request No. 65**

Admit that the outlined area identified as "ENVIRONMENTAL PROTECTION FACILITIES" in the map attached to the 1993 Disclosure Instrument encompasses the entirety of the WWTU.

**Response to Request No. 65**

MPM objects to this request on the ground that "WWTU" is vague and ambiguous. MPM further objects to this request on the ground that "encompasses" is vague and ambiguous. Subject to and without waiver of its objections, MPM states that it has made reasonable inquiry, and the information it knows or can readily obtain is insufficient to enable it to admit or deny this request.

**Request No. 66**

Admit that the outlined area identified as "ENVIRONMENTAL PROTECTION FACILITIES" in the map attached to the 1993 Disclosure Instrument encompasses the entirety of the area where MPM claims to have discovered PCBs in connection with its efforts to upgrade the WWTU.

**Response to Request No. 66**

MPM objects to this request on the ground that "WWTU" is vague and ambiguous. MPM further objects to this request on the ground that "encompasses" is vague and ambiguous. Subject to and without waiver of its objections, MPM states that it has made reasonable inquiry, and the information it knows or can readily obtain is insufficient to enable it to admit or deny this request.

MPM SILICONES, LLC

By its attorneys,

Robert S. Sanoff (Bar Roll No. 106915)
rsanoff@foleyhoag.com
Adam P. Kahn (Bar Roll No. 106913)
akahn@foleyhoag.com
Zachary Gerson (Bar Roll No. 106914)
zgerson@foleyhoag.com
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, Massachusetts 02210-2600
Telephone: (617) 832-1000
Facsimile: (617) 832-7000

Dated: March 30, 2015

**CERTIFICATE OF SERVICE**

I hereby certify that on March 30, 2015, I caused a true copy of the foregoing Responses to Defendant Union Carbide Corporation's First Set of Requests for Admission to Plaintiff MPM Silicones, LLC to be served via first class mail to:

Karl S. Bourdeau
Beveridge & Diamond P.C.
1350 I Street, N.W., Suite 700
Washington DC 20005

and via e-mail to kbourdeau@bdlaw.com, hsegall@bdlaw.com, mbrillault@bdlaw.com, and egrauman@bdlaw.com.

Zachary Gerson



B4365047